UNITED STATES *v.* MYERS & Co. *et al.* (No. 1476).[1]

SAWED AND DRESSED BOARDS WITH ORNAMENTAL BEADING.

The question is whether the beading which appears upon the ceiling lumber and upon some of the Novelty siding serves to exclude the importation from proper classification as "not further manufactured than sawed, planed, and tongued and grooved," paragraph 647, tariff act of 1913. The planer and matcher used in dressing sawed boards is, in fact, simply a planing machine, and its work is simply planing, whether the boards are or are not beaded in the process. "Planing" includes beading, the beading giving the boards no new name, character, or use. The free-entry clause applies.

United States Court of Custom Appeals, February 23, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36765 (T. D. 34871).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present merchandise consists of sawed and dressed boards which were imported under the tariff act of 1913.

---

[1] Reported in T. D. 35179 (28 Treas. Dec., 318).

The collector assessed the same with duty at the rate of 15 per cent ad valorem under the provisions of paragraph 176 for manufactures of wood not specially provided for.

The importers filed their protest against the assessment, claiming free entry for the lumber as boards not further manufactured than sawed, planed, and tongued and grooved under paragraph 647 of the act. .

The protest was submitted upon evidence to the Board of General Appraisers and was sustained, from which decision the Government now appeals.

The following is a copy of the two paragraphs of the act of 1913 which are thus brought into question:

176. House or cabinet furniture wholly or in chief value of wood, wholly or partly finished, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially pro.ided for in this section, fifteen per centum ad valorem.

(Free List.) 647. Wood: Logs, timber, round, unmanufactured, hewn or sawed, sided or squared; pulp woods, kindling wood, firewood, hop poles, hoop poles, fence posts, handle bolts, shingle bolts, gun blocks for gunstocks rough hewn or sawed, or planed on one side; hubs for wheels, posts, heading bolts, stave bolts, last blocks, wagon blocks, oar blocks, heading blocks, and all like blocks or sticks, rough hewn, sawed, or bored; sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, and tongued and grooved; clapboards, laths, pickets, palings, sta.es, shingles, ship timber, ship planking, broom handles, sawdust, and wood flour; all the foregoing not specially provided for in this section.

The present issue, therefore, is whether the boards in question have been further manufactured than sawed, planed, and tongued and grooved. If this question be answered in the negative, then the importation is concededly entitled to free entry.

The imported boards vary somewhat in dimensions, but in a general way they may be said to be about 12 feet in length, 6 inches in width, and 1 inch in thickness. They consist of two classes. One class is designed for use as inside ceiling; these boards are tongued and grooved, and have plain smooth sides except for two half-round beads which extend the length of the boards, one at the edge and the other midway between the two edges. These beads are ornamental only; when the boards are in position each has the appearance of being in fact two narrow boards instead of a single wide one. The other class of imported boards is called "Novelty" siding, and is chiefly used as siding for frame buildings. These boards ordinarily have no ornamental beads upon their surface like those just described, nor are they tongued and grooved. Their edges are designed to overlap one another when in position, and for this purpose the lower edge of the upper board is cut to a rabbet, while the upper edge of the lower board is cut with a concave or cove effect so that it may fit into the rabbet. The outer side of these boards is

generally smooth and level, except for a so-called cove or concave cut which extends for a distance from the edge of the board. The object of the cove is thus seen to be chiefly utilitarian, since it forms part of the rabbet joint; nevertheless it is cut so as to be partly ornamental also. In some instances boards of this kind.carry also the ornamental beads above described; in such case they are treated in this case as belonging to the class of beaded lumber rather than that of ordinary Novelty siding.

The two classes of boards just above described were alike refused free entry under paragraph 647, *supra,* and were both assessed with duty as manufactures of wood under paragraph 176, *supra.* Nevertheless the court is advised that the Government does not contend for the assessment of the ordinary Novelty siding, but limits its present claim to the beaded lumber alone. This statement is authorized in part by the ruling of the Treasury Department (T. D. 34178), issued February 11, 1914, in which the paragraphs in question were discussed, with the following conclusion:

While it is difficult to establish a well-defined line of demarcation between lumber which is dutiable as manufactures of wood under paragraph 176 of the tariff act and lumber which falls within the provisions of paragraph 647 of the said act, the department is of the opinion, in view of the decisions cited and giving due consideration to the purpose of the present tariff act, which is to reduce duties, that flooring, although in addition to being planed and tongued and grooved, is plowed on the underside to insure a perfect fit to the board as flooring, is not excluded from classification under paragraph 647. The department is also of the opinion that ordinary Novelty siding, ordinary window-parting strips, outside baseboards, ordinary siding, and other articles which are not molded or beaded are entitled to admission free of duty under paragraph 647.

Articles such as sash rail, stair rail, crown molding, nosing, molded baseboard, beaded Novelty siding, O. G. molding, signboard molding, and similar articles, when beaded or molded, are, in the opinion of the department, properly dutiable as manufactures of wood at the rate of 15 per cent ad valorem under paragraph 176 of the tariff act.

The foregoing statement therefore limits the present issue to the question whether the beading which appears upon the ceiling lumber and also upon certain of the Novelty siding, withdraws such merchandise from the classification of lumber "not further manufactured than sawed, planed, and tongued and grooved." In seeking to answer this question recourse may be had first to the testimony of the witnesses, and next to the definitions given by the lexicographers.

According to the testimony, such lumber as is herein involved is first sawed into boards of suitable dimensions. The boards are then run through a machine which is called a planer and matcher. This machine operates four rotating cylinders, each of which is equipped with certain cutting knives. The four cylinders are set in a rectangular position, and as the boards are fed into them the knives dress the

four sides of the boards at the same time and by the same operation. The knives are removable from the cylinders; they come in many different shapes, which may be diversely adjusted therein. Therefore, as a board passes through the cylinders the two edges may be tongued and grooved or planed smooth, while at the same time the two sides may be planed entirely smooth, or partly smooth but with the cove effect and either with or without the bead effect. That is to say, it depends upon the adjustment of the knives upon the cylinders as to the form of the four surfaces of a board when it issues from the cutting cylinders, for the knives may be set to suit the various purposes of the operator. The operating machine is called a planer and matcher because of its four cutting cylinders, whereby the edges of boards are "matched" at the same time that the sides are dressed. The edges are said to be "matched" whether they are planed perfectly smooth or are rabbeted or are tongued and grooved. There is also a machine in common use called a "surfacer," having but two cutting cylinders, by means of which only the two sides of the boards are dressed at a single operation. Such machines also may be adjusted so as to cut beads along the boards, but this would require considerable trouble and would be unusual in practice. Boards such as those now in question are practically always finished by means of the planer and matcher, that being the most speedy and economical process.

The record contains the testimony of 12 witnesses, all of whom were familiar with the processes which have just been described and familiar also with the terms in general use in the wholesale lumber trade in this country. The witnesses without exception testified that the planer and matcher above described is in fact simply a planing machine; that the work done by it is in fact simply planing, whether the boards be beaded or not; and that the word "planing" is uniformly used by the wholesale trade in this country as a generic term broad enough to comprehend all of the operations above described. This testimony in relation to trade usage was not designed to prove a peculiar commercial definition of the term "planing" but was submitted upon the claim that the trade usage of the term is identical with that which is adopted by common acceptation. The following extracts from the testimony are pertinent to the foregoing statements:

Morris H. Gatchel:

Q. What is a planer and matcher?—A. It is a machine having a top and bottom head and two side heads.

Q. What do those heads carry?—A. The top and bottom head will carry a planing knife which makes a planed surface.

Q. They carry knives, do they, the top and bottom heads?—A. Yes, sir.

Q. And the side heads also?—A. Yes, sir; or they will carry a knife that will make a groove or cut. The two side heads make a tongue and groove only.

Q. (By General Appraiser McClelland.) Are these effects all produced by one process?—A. Yes, sir.

Q. (By Mr. Strauss.) Does the difference in the effect, whether it be in the shape of a bead or of a larger groove, require any additional operation?—A. No, sir.

Q. Are the effects produced by the difference in the position of the knives and also in the difference in the shape of the knives?—A. It does not require either additional labor or additional machinery to do it.

Q. It lies merely in the adjustment and shape of the knives, does it?—A. Exactly.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Is the operation of beading, as described by you, a planing process?—A. Yes, sir.

Q. Is the operation of tonguing and grooving a planing process?—A. Yes, sir.

Q. Is the operation of coving a planing process?—A. Yes, sir.

## William R. Crombie:

Q. Is the operation of putting the lumber through the planer and matcher a process of planing or sawing or augering, or what? What is the process?—A. It is planing.

Q. Anything further than a planing process?—A. No; nothing.

Q. Does the fact that this bead was produced at the same time that the smooth surface was produced, or that the bead was produced at the same time that the deep cut in Exhibit F was produced, change it in any respect?—A. No.

Q. What use is it put to, Exhibits A to F?—A. Oh, that is used for partitions, fencing, siding, and barns.

Q. Use the same as Exhibit Z, the nearest one to you, is put?—A. Yes; the same use.

Q. (By Mr. Wood.) In what sense do you use the term planer or planed?—A. A planer?

Q. The term planed.—A. Planed is running through a surfacer, planer, and the matcher. It is a generic term.

Q. Is it the same thing whether it is run through a surfacer or whether run through a planer and matcher?—A. It is all planed lumber.

## William Bennett:

Q. Whether the lumber be cut in the form as shown by Exhibit Z or whether it be in the form of any of the other Exhibits A to F, does that undergo any other operation?—A. No, sir; it is all done in the one operation of the planer and matcher.

Q. And is there anything in that operation other than a planing operation?—A. No, sir.

Q. What kind of an instrument is used for the removal of the surface to produce these effects?—A. A planing knife.

Q. Are they all planing knives used in the planing and matching machines?

Mr. Wood. Objected to as leading.

A. Yes, sir; planing.

Q. Matching?—A. Yes, sir.

Q. Have they specific names as well as knives, do you know?—A. Oh, yes.

Q. And what are those names?—A. Planing, beading, matching.

Q. But whatever their several names may be, are they or are they not all planer knives?—A. They are all planer knives.

Q. To what uses are Exhibits A to F put?—A. Such as the—that is, used for siding, fences, partitions.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Are those descriptions of beading, tonguing and grooving, coving, rabbeting, and other words that I can not think of at the moment, merely descriptive of the design in which the planing is to be done?—A. Merely descriptive of the designs.

It thus appears that according to trade usage the word "planing" is a generic term which includes the beading process now in question. The following authorities sustain the claim that this definition of the term is the common and ordinary one in daily speech:

Standard Dictionary:

*Plane.*—A tool used to produce a plane surface. * * * Planes for shaping, cutting, etc., are named * * * . (2) From their use or purpose, or the object made or involved; as * * * grooving plane (having a bit for making channels in wood). * * *

*Bead plane.*—A plane for working bead moldings of a fixed size.

Century Dictionary:

*Plane.*—A tool for paring, smoothing, truing, and finishing woodwork. * * * Planes are made in a great variety of shapes and sizes, and range from 1 to 72 inches in length. Nearly all are distinguished by names having reference to the particular kind of work for which they are designed, as the *edge plane, molding plane,* and *smoothing plane.*

*Bead plane.*—A form of plane used for cutting a bead. The cutting edge of the plane iron is a semicircle with diameter equal to the diameter of the required molding.

Knight's American Mechanical Dictionary:

*Plane.*—(Woodworking.) A carpenter's cutting and surface-smoothing tool, of which there are many varieties, called from some peculiarity of construction or purpose.

*Bead plane.*—(Carpentry.) A molding plane of semicylindric contour, generally used in sticking a molding of the same name on the edge or on the side close to the arris. A set consists of nine planes, each working a half-round of given radius.

It may be said in conclusion that the witnesses in this case uniformly testified that the beading process in question is in fact a species of planing, and that the trade always uses the term in that sense; furthermore, the dictionaries and similar authorities without exception define the word "planing" so as to be inclusive of such beading as that in question in this case. It should therefore be assumed that Congress intended the term to bear that meaning in paragraph 647, *supra*, unless something in the legislative history of the subject or in the context of the paragraph would require a different interpretation.

The Government contends that the addition of the words "and tongued and grooved" in the classification implies that Congress had not used the term "planed" in the generical sense claimed by the importers, for the descriptive words "tongued and grooved" would have been wholly unnecessary if the preceding term "planed" already included that process. The Government therefore claims a more restricted interpretation, such as would not include such processes as beading or tonguing and grooving, within the meaning of the word "planed." In answer, however, it may be said that Congress used the terms "and tongued and grooved" in the classification as words of specification and not as words of extension. It

must be conceded that this is not uncommon in tariff legislation. This construction is favored by the fact that one purpose of the act was to reduce tariff duties, and that such beaded boards as those now in question are essentially similar in character to ordinary Novelty siding boards, which are concededly covered by the disputed classification. They are alike common materials for plain building purposes, and they are produced by the same essential operation. It does not seem reasonable that the use of a beading knife in the planing process should alone deprive the boards in question of free entry under paragraph 647 and make them dutiable as manufactures of wood not specifically provided for under paragraph 176. It is true that the beading process serves an ornamental purpose, but upon the other hand, the extended coves upon Novelty siding are likewise ornamental in character, for such boards could well be fitted with rectangular joints. The beading of the boards seems to add nothing to their cost, nor does it give them a new name, character, or use. They are simply lumber which has been planed in a well-known manner and has not been advanced beyond the condition of planed boards.

The decision of the board is therefore *affirmed.*