The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* C. S. EMERY & Co. (No. 3323)[1]

United States Court of Customs and Patent Appeals, November 10, 1930

*Charles D. Lawrence*, Assistant Attorney General, for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* and *Joseph Schwartz* of counsel) for appellee.

---

[1] T. D. 44399.

[Oral argument October 7, 1930, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

We quote the pertinent portions of the following two paragraphs of the Tariff Act of 1922, which are concerned in the decision of this case:

PAR. 410. * * * house or cabinet furniture wholly or in chief value of wood, wholly or partly finished, wood flour, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

PAR. 1700. Wood: Logs; timber, round, unmanufactured, hewn, sided or squared otherwise than by sawing; pulpwoods; round timber used for spars or in building wharves; firewood, handle bolts, shingle bolts; * * * sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, and tongued and grooved; * * *

The merchandise, classified by the collector as manufactures of wood, which was before the court below, was represented by a number of exhibits, all of which merchandise was claimed by the importer to be free under paragraph 1700. The testimony in the court below showed that all except Exhibit 1, doorsills (outside and inside thresh-holds), and Exhibit 8, stair rails, had been subjected to the process of sanding, which was, by the court below, regarded as a further manufacturing process than that provided for in the free-list paragraph, and the protest as to the merchandise represented by these exhibits was overruled. There being no showing that Exhibits 1 and 8 had been sanded, and the court below, being of the opinion that they were not further manufactured than sawed, planed, and tongued and grooved, the protest, as to the merchandise represented by them, was sustained.

From the judgment of the United States Customs Court, holding that the merchandise represented by Exhibits 1 and 8 was free of duty under paragraph 1700, the Government has appealed to this court.

The merchandise represented by Exhibit 1 consists of outside and inside threshholds, called doorsills, and the boards from which they were made have, by planing, been beveled and rounded on each edge and in some manner grooved, so that there are two broad, shallow grooves, running lengthwise on the under side. They are invoiced as threshholds and are ordered and imported in certain lengths or multiples of such lengths as are desired for certain sized doors. After importation it is only necessary to cut the boards, if of more than one length, and to fit them to the door for which they are intended. The merchandise represented by Exhibit 8, stair rails,

is invoiced as stair rails, which are ordered in the lengths desired. They are about 2½ inches wide at the widest dimension and 2 inches thick at the point of greatest thickness. On the top of the rail, running lengthwise of same, are two concave parallel surfaces, separated by a higher convex surface. The outer edges of the concave surfaces are rounded, and are in the usual form of stair rails. On the bottom of the rail there is one large groove, running the entire length of the rail, into which fit the balusters. Several other grooves are made on the sides for ornamentation. The testimony shows that the merchandise is known as stair rails and that to put them to use nothing is required except that they be cut to length and fitted at the ends.

It is the contention of the importer that the articles have not been further manufactured than sawed, planed, and tongued and grooved.

The Government does not contend that anything has been done to them except what is done in the processes of sawing, planing, and tongueing and grooving, but that they have been so manufactured as to become finished articles and are, therefore, not "other lumber" within the meaning of the free-list paragraph.

It will be noticed that the free-list paragraph contemplates "other lumber" which has been manufactured by sawing, planing, tongueing and grooving. We are of the opinion, however, that for lumber to be classified as free under paragraph 1700, the sawing, planing, and tongueing and grooving processes must not be such a manufacturing of the same as to remove it from the category of lumber which still remains a material.

The wording of the free-list paragraph would indicate that Congress contemplated the free listing of certain lumber which had been manufactured, such as flooring and ceiling, although the processes of manufacture employed might result in a manufacture of wood, and although the wood, when so manufactured, was designed to be used and fit only for use for one definite purpose. But, we see nothing in the paragraph that would indicate that a floor or a ceiling, made from the manufactured lumber, should be free.

The difficulty with the importer's position is that the importation at bar is no longer lumber which is sawed, planed, and tongued and grooved, but is a distinct article made from lumber, which, in the process of making, has been sawed, planed, and tongued and grooved. Flooring, siding, and ceiling may be sawed, planed, and tongued and grooved and yet it is material for making floors, ceilings, and sidings. In the instant case the article which is sawed, planed, and tongued and grooved, is no longer lumber material for making anything, but is the thing itself and is a manufacture of wood, and, we think, dutiable under paragraph 410.

The importer relies upon *United States* v. *Meyers*, 5 Ct. Cust. Appls. 541, T. D. 35179, which involved boards designed for use as inside ceiling; *Carr* v. *United States*,C 11 t. Cust. Appls. 35, T. D. 38647, which involved dressed birchor floing, tongued and grooved, with holes bored at regular intervals for nails; *United States* v. *Gallagher & Ascher*, 12 Ct. Cust. Appls. 472, T. D. 40670, the merchandise in which consisted of pieces of maple and spruce about 15 inches long by 4½ inches wide, wedge shaped, partially sawed through lengthwise, partially planed, used to make cello, violin, and viola tops, bodies, and sides; and *United States* v. *Young*, 15 Ct. Cust. Appls. 111, T. D. 42188, where the merchandise was cedar pencil blocks, sawed to the proper dimensions for the purpose of making pencils and nothing else.

It will be seen that in each of these cases the merchandise was dedicated to a certain use but that it had not been processed to the extent that it became the article for which the material was intended. The ceiling boards were not ceilings, the flooring boards were not floors, and the cello material was not the backs, tops or sides for cellos. Neither were the cedar pencil blocks converted into pencils or any part of pencils.

In the instant case the sawed, planed, and tongued and grooved wood was no longer lumber dedicated to the making of some article as in the cases above cited, but it was wood which had been processed into the article itself. We think the provision of paragraph 410 aptly describes the merchandise and that it should be dutiable under that paragraph as "manufactures of wood." See *Tide Water Oil Co.* v. *United States*, 171 U. S. 210; *United States* v. *Dudley*, 174 U. S. 670; *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769; and Abstract 47839, 46 Treas Dec. 654.

The judgment of the United States Customs Court is *modified* and the cause *remanded*. It is *affirmed* in so far as it overruled the protests and *reversed* in so far as it sustained the protests.