(C. D. 1401)

BENDIX MANUFACTURING COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 27, 1952)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Jerome Vale*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoices as "Carved Furniture Mouldings," "Carved Furniture Beadings," "Unfinished Mouldings," and "Quarter-round Beadings." It was assessed with duty at the rate of 40 per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930 for "wood moldings and carvings to be used in architectural and furniture decoration."

The plaintiff claims that the articles in question are not "wood moldings" or "carvings," but are, rather, "turnings." The protest claim chiefly relied upon is that for duty at the rate of 25 per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for "manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for." An alternative claim for duty at the rate of 20 per centum ad valorem under the provision in the same paragraph, as modified, for parts of furniture is contained in the protest but is not pressed.

There does not seem to be any question but that the merchandise at bar was produced by turning, that is to say, the raw material, consisting of sticks of wood 3 feet long and of suitable diameter to produce the final product, was placed in a turning machine in such manner that the wood was turned by the machine on its longitudinal axis. A stationary cutting tool or knife was held against the turning piece of wood which resulted in the cutting away of the wood across the grain thereof, and by varying the pressure on the tool or knife and moving the same along the wood (or moving the wood past the knife), an effect in the nature of a series of beads or balls or ovals was created.

We have before us as exhibits 1 to 10, inclusive, representative samples of each of the items in dispute. Some of the exhibits, i. e., Nos. 1, 4, and 6, are in the full-round shape as turned by the turning machine; others, namely, Nos. 2, 3, 5, 7, 8, and 9, have been sawed in half longitudinally, and exhibit No. 10 is in quarter-round shape, obviously produced by sawing the half-round product in half.

On behalf of the plaintiff company, Ferdinand Bendix, one of its owners, testified. He stated the business of the company to be the wholesaling and importing of wood moldings and turnings and other wood products, and that he had handled such products, both manufacturing and buying and selling, for about 30 years. Mr. Bendix testified that wood moldings are produced on a machine known as a "molder" and that when the design is plain the machine is called a "sticker," the product being known as a "sticker molding."

He described the sticker as a machine into which sticks of wood are fed the long way. The sticker has a shaped knife or knives which turn or revolve, and as the wood is fed past the knives, the latter shape it into parallel lines along the grain of the wood. He distinguished between moldings and turnings in that the former, he said, are always shaped and designed parallel to the grain, while the latter are shaped and designed against the grain, or crosswise. A carved molding, he said, is produced by placing the sticker molding in another machine which performs a three-dimensional carving operation on it.

In response to questions by the court the witness stated that articles such as exhibits 1 to 10, inclusive, are—

* * * very often called, I admit, a beaded molding, even though it has never been molded. (Tr. p. 34.)

but it is very clear that in the witness' opinion this is an erroneous application of the term. The gist of his testimony and of the plaintiff's contention is that the method of production, i. e., by shaping with the grain, determines conclusively whether an article is or is not a wood molding, and that articles made otherwise, even though they may have the same or similar uses, are not wood moldings.

The defendant offered the testimony of Mario Colombo, a furniture designer, assembler, and manufacturer of some 25 years' experience,

to the effect that in his plant exhibits 2, 3, 5, 7, 8, and 9 were used as decorations on furniture, and he identified exhibits 4 to 10 as bead moldings, and exhibits 1 to 3 as moldings.

It is at once apparent that the fundamental question involved is the meaning of the term "wood moldings" as used in the provision in paragraph 412, *supra.* Plaintiff evidently concedes that the use of the articles is in architectural and furniture decoration, for in the brief filed in its behalf it is conceded that if this court finds that the imported articles are "wood moldings" the collector's classification is correct. Neither side apparently contends that the articles are "wood carvings," so that the issue is limited to the question of whether the imported articles are within the meaning of the term "wood moldings" as used in the tariff provision, *supra.*

Neither party to this case claims that at the time of the passage of the Tariff Act of 1930 the term "wood moldings" as used in the trade and commerce of the United States had any meaning different from its common meaning. In fact, as appears from the brief filed on behalf of the plaintiff, it is affirmatively contended by the plaintiff that the common and commercial meanings of the term are and have been the same. It is presumed, in the absence of evidence to the contrary, that the common meaning of words is the same as their commercial meaning. *Swan* v. *Arthur*, 103 U. S. 597, 598, 26 L. ed. 525, 526, and *Rice Millers' Association, American Manufactures* v. *United States and Oberle (Inc.)*, 15 Ct. Cust. Appls. 355, 359, 360, T. D. 42560, and cases therein cited. There is, therefore, no question of the application of the rule of commercial designation in the case at bar. *Hampton, Jr., & Co.* v. *United States*, 12 Ct. Cust. Appls: 490, 493, T. D. 40695.

The interpretation of the common meaning of statutory terms is matter of law within the cognizance of the court. *Marvel* v. *Merritt*, 116 U. S. 11, 29 L. ed. 550, and *Sonn* v. *Magone*, 159 U. S. 417, 40 L. ed. 203. Therefore, the testimony of witnesses with respect to the common meaning of such a term is not conclusive upon the court, but acts as an aid to the memory or understanding of the court. *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, 18, T. D. 42713. The court may invoke such aids to its memory and understanding of the term as dictionaries, lexicons, written authorities, or witnesses, but the effect of such aids, including the testimony of witnesses, is advisory only, and they have no binding effect upon the court. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, 355, 356, T. D. 43090.

We have set forth the foregoing at some length in order to emphasize that the issue before us is one of law, not of fact, and that decision thereon is to be rendered in accordance with the court's knowledge and understanding of the term and not upon a preponderance in weight of evidence offered at the trial.

As has been said, it is the plaintiff's contention that the method of production, i. e., by shaping with the grain, determines whether an article is or is not a wood molding. This does not accord with the court's understanding of the term. As we understand the term "molding," it is not the method of production which determines whether or not an article is a molding but its nature and use. Our conception of the meaning of the term is well expressed in volume 15, Encyclopaedia Britannica, 14th ed., p. 925, where, under the caption "moulding," the term is defined as follows:

* * * in architecture and the decorative arts, a variation and modelling of a surface in a band, approximately continuous, whose profile or section is either always the same, or whose changes are rhythmically repeated.

We do not consider that this meaning of the term would be altered by the use of the adjective "wood" in connection therewith, as this would denominate only the material from which the molding was made.

In a similar vein is the applicable definition of "molding" in Funk & Wagnalls New Standard Dictionary, 1942:

3. A more or less ornamental strip on some part of a structure or object, as on a picture-frame; specif., in architecture, a depressed or projecting member, typically a subordinate member, and usually of ornamental intent, on a surface or in an angle of any part of a building, usually showing in cross-section a complex broken line composed chiefly of curves, but often richly carved, and used in combination with several others, as in a cornice, capital, door- or window-jamb or -head, etc.

and the applicable definition in Webster's New International Dictionary, 2nd edition, 1945:

molding, n. * * * 3. Arch. a A plane, or curved, narrow surface, either sunk or projecting, used for decoration, often in groups, by means of the lights and shades upon the surface. b A strip of material having such a surface and prepared for ornamental application, as to a wall.

The articles here involved as represented by exhibits 1 to 10, inclusive, clearly fall within the meanings above set forth. They are comparatively narrow strips or bands of wood, used for decoration, whose profile and section changes are rhythmically repeated. The fact that they were produced by turning on a turning machine, rather than by shaping on a molding machine, we deem of no importance in our view of the common meaning of the tariff term. If it is a fact that in the trade and commerce of the United States dealing in wood moldings there was, at the time of the enactment of the tariff provision for "wood moldings," a uniform, general, and definite meaning for the term "wood moldings" which differed from the foregoing and which limited the application of the term to the product of a molder or shaper, that fact should have been established at the trial of the issue. Commercial designation is a matter of fact and can be established or found

only upon evidence. *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259, and cases therein cited.

In the absence of such proof and on the record as made and in the light of our understanding of the common meaning of the term, we are unable to hold for the plaintiff. Judgment will therefore issue overruling the protest claims accordingly.