(C.D. 2366)

BEST MOULDING CORPORATION *v.* UNITED STATES (BROWN, ALCANTAR & BROWN, INC., PARTY IN INTEREST)

United States Customs Court, First Division

(Decided October 22, 1962)

*Lamb & Lerch* (*John G. Lerch* of counsel) for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the party in interest.

Before OLIVER and WILSON, Judges

OLIVER, Chief Judge: The protest in this case was brought by an American manufacturer of wood moldings under the provisions of section 516(b) of the Tariff Act of 1930, as amended. Documentary evidence establishing compliance with the procedural and jurisdic-

tional requirements of that section were received in evidence by consent, and no issue is raised with respect thereto.

The protest is directed against the action of the collector of customs assessing duty on an importation of wood pine molding at the rate of 25 cents per thousand feet, board measure, under the provision for sawed lumber in paragraph 401, Tariff Act of 1930, as modified by T.D. 51802, plus 75 cents per thousand feet, board measure, under the provision for dressed lumber in section 4551, Internal Revenue Code of 1954, as modified by said T.D. 51802. Both the tariff act and the internal revenue code contain provisions that, in determining board measure for the purposes of those statutes, "no deduction shall be made on account of planing, tonguing, and grooving." The theory of the assessment obviously was that the processes to which the imported molding had been subjected had not advanced it beyond the condition of lumber which had been planed.

The primary claim made in the protest is that, in its imported condition, the merchandise had been advanced beyond that state and, in fact and law, consisted of manufactures of wood, dutiable at the rate of 16⅔ per centum ad valorem under the provision therefor in paragraph 412 of the tariff act, as modified by T.D. 52373, supplemented by T.D. 52476. In the alternative, it is claimed that the imported moldings were properly dutiable at the rate of 17 per centum ad valorem under the provision in said paragraph 412, as modified by T.D. 54108, for—

Wood moldings and carvings to be used in architectural and furniture decoration.

Although, as required by the statute, the protest was filed against the action of the collector of customs, a governmental officer, the burden of the defense was assumed by the party in interest, the importer of the subject wood moldings, under section 516(c), *supra*, as amended. The Government has noted that it supports the position of the party in interest.

Samples of the merchandise involved in the importation at bar were received in evidence without objection as plaintiff's exhibits 2–A to 2–R, inclusive. It appears from the record that the said exhibits represent the imported merchandise in every respect, except length.

Both of the parties have apparently considered the imported merchandise to be all of the same character, that is to say, no effort was made to establish that any one or more of the 18 patterns or varieties of moldings involved should be classified in any different manner than the others, and the record indicates that they are all regarded in the same way by the trade and commerce of this country dealing in such merchandise.

An examination of the merchandise as represented by the samples shows it to consist of strips of wood exhibiting various contours, such

as quarter round, full round, cove, and others denominated by the witnesses as base, lattice, stop, ceiling mold, and so on. The merchandise is imported in bundles, each containing moldings of a particular pattern in a given length and size.

The record shows that, generally speaking, the moldings here involved are stock items, that is to say, they are common sizes, forms, and shapes of wood moldings made to generally known and widely used standards. However, in some instances, a pattern or a blueprint may be supplied to the mill producing the moldings calling for a special size, shape, or form of molding other than standard.

Further, the record indicates that, whether made under standard or special specifications, the moldings in all cases are bought and sold on a linear or board foot basis and are not cut to size by the producer for particular uses.

Although the record as presented by both sides is very detailed as to the manner in which merchandise such as that at bar is produced, there is actually no serious dispute as to the facts in relation thereto. Rough lumber is sawed and resawed into the nearest approximation of the contour or pattern of molding that is desired to be made. Sometimes such lumber is also planed, but it appears that planing in such cases is of the "hit-or-miss" variety.

The lumber so prepared is fed into a machine generally called a molder or a molder match. In such a machine, there are usually four cutter heads, for the top and bottom and the two sides of the lumber. The cutter heads are mounted on spindles and are equipped with from 2 to 12 knives which revolve at high speed as the lumber is fed through the machine. The knives have been previously ground by skilled workmen so that they will produce the size and contour ultimately desired to be exhibited by the molding, and are carefully set into the heads and jointed so as to give a finished, smooth effect to the wood.

There is no serious dispute that what is before us is wood moldings. The plaintiff primarily contends that such moldings are lumber which has been advanced beyond the state of being planed and so are taken out of paragraph 401. The party in interest contends that the process of producing a wood molding is a form of planing and has been judicially and administratively so recognized over a long period of time, covering the passage of one or more tariff acts.

The parent case bearing upon the issue in question, and one upon which the importer in this case relies, is *United States* v. *Myers & Co. et al.*, 5 Ct. Cust. Appls. 541, T.D. 35179. That case arose under the Tariff Act of 1913, which contained a free-list provision (par. 647) for "lumber, not further manufactured than sawed, planed, and tongued and grooved." Certain boards had been imported which, in addition to having been tongued and grooved, had two half-round

beads on the sides, one at the edge, and the other midway between the two edges. The beads were ornamental only, and, when the boards were in position (they were used in ceilings), each had the appearance of two narrow boards instead of a single wide board.

The beads were put on the boards by running the sawed boards through a machine called a planer and matcher, which operated in a manner similar to the machines which produced the wood molding at bar, that is to say, there were four rotating cylinders, each equipped with cutting knives ground or made so as to produce the effect desired, in the instance represented by the *Myers* case, two beads running lengthwise on the surfaces of the boards.

The collector assessed duty on the said boards pursuant to a ruling issued by the Treasury Department and reported in 26 Treas. Dec. 242, T.D. 34178, under the provision in paragraph 176 of the Tariff Act of 1913 for manufactures of wood.

In determining the issue, the appellate court noted that both commercially, as shown by the record, and commonly, as shown by reference to dictionary definitions, the term "planing" included not only the production of a plane, i.e., flat surface, but also the production of shaped surfaces, including beaded surfaces.

Subsequently, a case arose in the predecessor of this court involving quarter-round molding, which was without doubt similar, from that description, to the quarter-round molding here in issue. In a decision reported as *W. E. Ellis* v. *United States*, 30 Treas. Dec. 449, Abstract 39386, the predecessor of this court noted that the molding was made on a molding machine by what appears to be a process substantially the same as that which produced the moldings at bar. Following the reasoning in the *Myers* case, *supra*, the molding was held to be lumber, not further manufactured than sawed and planed.

No appeal was taken from that decision, which was apparently acquiesced in, or at least followed as a classification practice, by the Treasury Department, as appears from a consideration of a departmental ruling reported in 58 Treas. Dec. 619, T.D. 44382, issued shortly after the passage of the Tariff Act of 1930. The ruling made by the Treasury Department in this case upon the request of the American manufacturer, plaintiff herein, indicates a continued adherence to the practice of so classifying merchandise such as that at bar.

The cited judicial decisions established that the common meaning of the terms "planing" and "planed," as used in the tariff statutes applicable to lumber, included wood moldings produced by a molding machine. In effect, plaintiff herein asks this court to determine, as a matter of law, that such common meaning no longer applies to those terms and that wood moldings are excluded from the common meaning of those terms.

In general, plaintiff relies upon numerous decisions of this, our appellate court, and the Supreme Court of the United States applicable to the issue of the distinction between a material and a manufacture of that material, citing as particularly applicable the decisions of the Supreme Court in *Tide Water Oil Co.* v. *United States*, 171 U.S. 210, 43 L. Ed. 139, and *United States* v. *Dudley*, 174 U.S. 670, 43 L. Ed. 1129.

We are of the opinion that the decisions cited, and particularly those just named (which were in existence at the time the *Myers* and *Ellis* cases were decided), do not compel the result here sought by the plaintiff. On the contrary, the *Dudley* case, itself, indicates that many lumber articles produced by processes of sawing and planing, and bearing particular names indicating their ultimate use, such as flooring, ceiling, and sheathing, are not, for tariff purposes, manufactures of wood, but are merely specifications of the types of lumber involved.

The Court, in that case, made the distinction between wood materials, bought and sold by the thousand feet as lumber is, and wood which had been so made as to be dedicated to a single purpose and bought and sold by the unit.

This distinction was further developed in the case of *United States* v. *C. S. Emery & Co.*, 18 C.C.P.A. (Customs) 208, T.D. 44399, also cited and relied upon by the plaintiff. That case involved an importation of doorsills, or thresholds, and stair rails, which had been made by processes of sawing, planing, tonguing, and grooving. It appeared that the thresholds were "ordered and imported in certain lengths or multiples of such lengths as are desired for certain sized doors" and that the stair rails were "ordered in the lengths desired." It is apparent that, in holding the thresholds and stair rails to be manufactures of wood rather than lumber, the determining factor was that the imported articles had been made to fit certain sized doors or stairs. They were in lengths referable to the article itself, rather than in lengths intended for and suitable for use anywhere, as is the wood molding in this case.

Admittedly, it may be difficult to lay down a rule which will be dispositive of all questions which may arise as to whether a given item of wood is a material for the manufacture of an article, or is the article itself. However, in connection with wood moldings made by a molding machine, there is specific judicial precedent establishing as matter of law the common meaning of the applicable tariff terms—"planing" and "planed." In addition, there is the consistent and continued interpretation of those terms in the same manner by the agency of the Government charged with the administration of the act in which the words appear. Both of these have continued over the course of the passage of successive tariff acts without material change

by the Congress in the language involved, which, of course, implies legislative approval of the decisions and rulings.

We are of the opinion that examination of the record made and the briefs filed in this case does not reveal anything which would warrant a departure from the judicial precedent and administrative practice involved in the classification of the moldings here in issue. So far as we are aware, the reasons which impelled the judicial decisions and the administrative practice are as valid today as they were when the decisions and rulings referred to were made. In our view, no facts or law requiring a contrary result has been adduced, and we are, therefore, unable to find merit in the primary contention made by the plaintiff herein.

We, therefore, pass to a consideration of the alternative claim made, i.e., that the merchandise at bar is specially provided for in paragraph 412 as—

wood moldings and carvings to be used in architectural and furniture decoration.

At the outset, it may be said that it is not seriously contended that the moldings at bar are "carvings" or that they were to be used in furniture decoration. It is a fact, seemingly not denied by anyone, that the merchandise consists of wood moldings, and it is also a fact that it is the type of moldings used as trim around baseboards, ceilings, window frames, doors, etc., or, in other words, in buildings. In some cases, as, for example, the full round moldings, used as clothes poles in closets or as balusters or balustrades, the use is probably primarily functional rather than decorative. In others, as, for example, the quarter round, cove, and ceiling mold, the use is partly functional, i.e., to conceal an opening or an imperfect joining between a wall and a floor, door, or ceiling, and also partly decorative. Whether one use or the other predominates would, of course, depend upon the particular situation in which the molding was actually used, but, unquestionably, practically all of the moldings have varying degrees of functional and decorative use, and are suitable for both functional and decorative purposes.

As has been said, no effort was made to distinguish the nature of one type of the moldings involved from any other type, and the record indicates that the parties hereto, and the trade in which they are bought and sold, regard them as all of one character, and the court will so consider them.

It has been established by the record that the moldings at bar are in some degree decorative and that they are used in the construction of buildings. The question presented is, are they "Wood moldings * * * to be used in architectural * * * decoration?" It is obvious that, under the circumstances of this case, the keyword is "architectural."

The term "architectural" is defined in dictionaries as relating to the art of building, or to the style of design of a building. *Cf.* Webster's New International Dictionary, 2d edition, 1945, and Funk & Wagnalls New Standard Dictionary, 1942. The tariff provision in which it appears, however, indicates some ambiguity in the use of the word, for the very limitation of the provision in paragraph 412, *supra*, to wood moldings "to be used in architectural and furniture decoration" as well as the association of the term "moldings" with the term "carvings" seem to indicate that what was intended to be covered by the provision was not the ordinary commonplace moldings almost invariably found in any building, but something of a more special nature, on a higher or more artistic plane.

In the brief filed on behalf of the importer, party in interest, its counsel has set forth in considerable detail the legislative history of the provision in question, which first appeared in the Tariff Act of 1930. Briefly, this is as follows:

At the time the bill which ultimately became the Tariff Act of 1930 was under consideration by the Congress, appeal was made by the International Wood Carvers' Association for some form of protection for the wood carvers' craft and industry in America. It was stated by a representative of the association that the condition in which the American wood carving industry found itself was made possible by inadequate protection, or protective duties, and specific reference was made to "importations of carved furniture, and carved parts of furniture, carved piano cases and legs, as well as carved parts for buildings." Tariff Readjustment—1929, Hearings before the Committee on Ways and Means, House of Representatives, Seventieth Congress, second session, volume IV, pages 2884, ff.

Apparently, no action was taken in the House on the plea, but, in the Senate, an amendment to the bill as passed by the House was offered on the floor by Senator Couzens of Michigan, providing for a duty of 40 per centum ad valorem on—

Wood moldings and carvings to be used in architectural and furniture decoration.

The remarks of the Senator stating its purpose clearly show that the amendment was in response to the aforementioned appeal by the wood carvers. He stated:

Mr. President, this is an amendment to paragraph 411 [which, in the bill as finally enacted, became paragraph 412] to include these articles under the rate of 40 per cent ad valorem, which is the rate that was agreed to in the paragraph covering the other articles mentioned there. It appears that the woodworkers or carvers are not protected in these architectural designs for moldings. The amendment is for the benefit of the woodworkers who are suffering from importations of these articles from other countries. The designs are used in the furniture business and should carry the same rate as furniture. [Cong. Record, vol. 72, part 5, 71st Cong., 2d sess., p. 4653.]

The amendment was agreed to by the Senate and, in conference, the House accepted the Senate amendment. (Conference reports to accompany H.R. 2667, Nos. 1326, p. 61, and 1892, p. 65.)

From the foregoing, it is manifest that the wood moldings intended to be covered by the provision in question are those which are akin to wood carvings produced by wood craftsmen, and not such as are produced by the molding machine or, substantially, a planing process.

We are, therefore, of the opinion that the moldings at bar are not embraced by the provision in paragraph 412 under which plaintiff claims.

For the reasons hereinbefore mentioned, all of the claims made in the protest are overruled, and judgment will issue accordingly.