BEST MOULDING CORPORATION *v.* UNITED STATES (BROWN, ALCANTER & BROWN, INC., PARTY IN INTEREST) (No. 5140)*

United States Court of Customs and Patent Appeals,
December 12, 1963

*Lamb & Lerch* (*John G. Lerch*, of counsel) for appellant.
*Barnes, Richardson & Colburn* (*Hadley S. King*, of counsel) for Party in Interest.

[Oral argument November 7, 1963, by Mr. Lerch and Mr. King]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This appeal is from a judgment of the United States Customs Court, First Division, C.D. 2366, overruling the protest of appellant, an American manufacturer, and sustaining the collector's classification and duty assessment of pine wood moldings, the imported merchandise.

*C.A.D. 829.

The collector classified the pine wood moldings at the rate of 25 cents per thousand feet, board measure, under the provision of sawed lumber in paragraph 401 of the Tariff Act of 1930, as modified by T.D. 51802, plus 75 cents per thousand feet, board measure, under the provision for dressed lumber in section 4551, Internal Revenue Code of 1954, as modified by said T.D. 51802. Both the Tariff Act, as modified, and the Internal Revenue Code, as modified, contain provisions that, in determining board measure for the purpose of those statutes "no deduction shall be made on account of planing, tonguing, and grooving."

Appellant contends that the imported merchandise consists of manufactures of wood, dutiable at the rate of 16⅔ per centum ad valorem under the provision therefor in paragraph 412 of the Tariff Act of 1930, as modified by T.D. 52373, supplemented by T.D. 52476. In the alternative, it claims that the imported moldings are dutiable at the rate of 17 per centum ad valorem under the provision in said 412, as modified by T.D. 54108 for "Wood moldings and carvings to be used in architectural and furniture decoration."

The pertinent statutes are:

Paragraph 401, as modified:

\*     \*     \*     \*     \*     \*     \*

Sawed lumber and timber not specially provided for; all the foregoing, if of fir, spruce, pine, hemlock or larch

and in estimating board measure for the purposes of this paragraph no deduction shall be made on account of planing, tonguing, and grooving:

\*     \*     \*     \*     \*     \*     \*

Paragraph 412, modified:

Wood moldings and carvings to be used in architectural and furniture decoration.

\*     \*     \*     \*     \*     \*     \*

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

In describing how the imported merchandise is made, the Customs Court stated:

\*     \*     \*     \*     \*     \*     \*

Samples of the merchandise involved in the importation at bar were received in evidence without objection as plaintiff's exhibits 2-A to 2-R, inclusive. It appears from the record that the said exhibits represent the imported merchandise in every respect, except length.

\*     \*     \*     \*     \*     \*     \*

An examination of the merchandise as represented by the samples shows it to consist of strips of wood exhibiting various contours, such as quarter round, full round, cove, and others denominated by the witnesses as base, lattice, stop, ceiling mold, and so on. The merchandise is imported in bundles, each containing moldings of a particular pattern in a given length and size.

The record shows that, generally speaking, the moldings here involved are stock items, that is to say, they are common sizes, forms, and shapes of wood

moldings made to generally known and widely used standards. However, in some instances, a pattern or a blueprint may be supplied to the mill producing the moldings calling for a special size, shape, or form of molding other than standard.

Further, the record indicates that, whether made under standard or special specifications, the moldings in all cases are bought and sold on a linear or board foot basis and are not cut to size by the producer for particular uses.

Although the record as presented by both sides is very detailed as to the manner in which merchandise such as that at bar is produced, there is actually no serious dispute as to the facts in relation thereto. Rough lumber is sawed and resawed into the nearest approximation of the contour or pattern of molding that is desired to be made. Sometimes such lumber is also planed, but it appears that planing in such cases is of the "hit-or-miss" variety.

The lumber so prepared is fed into a machine generally called a molder or a molder match. In such a machine, there are usually four cutter heads, for the top and bottom and the two sides of the lumber. The cutter heads are mounted on spindles and are equipped with from 2 to 12 knives which revolve at high speed as the lumber is fed through the machine. The knives have been previously ground by skilled workmen so that they will produce the size and contour ultimately desired to be exhibited by the molding, and are carefully set into the heads and jointed so as to give a finished, smooth effect to the wood.

The Customs Court then considered appellant's contention that the wood moldings are manufactures of wood, i.e., lumber which has been advanced beyond the state of being planed and so are taken out of paragraph 401 as modified. Referring to *United States* v. *Myers & Co. et al.*, 28 Treas. Dec. 318, T.D. 35179 and *W. E. Ellis* v. *United States*, 30 Treas. Dec. 449, Abstract 39386, and the ruling issued by the Treasury Department and reported in 26 Treas. Dec. 242, T.D. 34178 under the provision in paragraph 176 of the Tariff Act of 1913 for manufactures of wood as well as the Treasury Department ruling reported in 58 Treas. Dec. 619, T.D. 44382, issued shortly after the passage of the Tariff Act of 1930, the lower court stated:

\* \* \* \* \* \* \*

The cited judicial decisions established that the common meaning of the terms "planing" and "planed," as used in the tariff statutes applicable to lumber, included wood moldings produced by a molding machine. In effect, plaintiff herein asks this court to determine, as a matter of law, that such common meaning no longer applies to those terms and that wood moldings are excluded from the common meaning of those terms.

\* \* \* \* \* \* \*

\* \* \* in connection with wood moldings made by a molding machine, there is specific judicial precedent establishing as matter of law the common meaning of the applicable tariff terms—"planing" and "planed." In addition, there is the consistent and continued interpretation of those terms in the same manner by the agency of the Government charged with the administration of the act in which the words appear. Both of these have continued over the course of the passage of successive tariff acts without material change by the Congress in the language involved, which, of course, implies legislative approval of the decisions and rulings.

We are of the opinion that examination of the record made and the briefs filed in this case does not reveal anything which would warrant a departure

from the judicial precedent and administrative practice involved in the classification of the moldings here in issue. So far as we are aware, the reasons which impelled the judicial decisions and the administrative practice are as valid today as they were when the decisions and rulings referred to were made. In our view, no facts or law requiring a contrary result has been adduced, and we are, therefore, unable to find merit in the primary contention made by the plaintiff herein.

As for appellant's alternative claim that the merchandise at bar is specially provided for in paragraph 412 as "Wood moldings and carvings to be used in architectural and furniture decoration," the Customs Court referred to the brief filed in behalf of the appellee setting forth in considerable detail the legislative history of the provision in question which first appeared in the Tariff Act of 1930. It concluded that the wood moldings intended to be covered by paragraph 412 are those which are "akin to wood carvings produced by wood craftsmen, and not such as are produced by the molding machine or, substantially, a planing process."

Appellant contends that the merchandise constitutes "manufactures of wood" and that the record substantiates this by showing that the merchandise is prepared by running lumber through a process of manufacture, i.e. a molding machine which converts the lumber into a finished article, with a definite given name and use. Appellant further argues that "moldings," as expressed in paragraph 412, means that the article must be used as a molding and that since the testimony shows that the imported merchandise is "moldings" and used in architectural * * * decoration," paragraph 412 must take precedence over the *eo nomine* provision in paragraph 401 for "lumber."

Appellant argues that the Customs Court should have followed its decision in *Bendix Manufacturing Company* v. *United States*, 28 Cust. Ct. 144, C.D. 1401. In that case the imported merchandise was described on invoice as "Carved Furniture Mouldings," "Carved Furniture Beadings," "Unfinished Mouldings," and "Quarter-round Beadings." It was assessed with duty of 40 per centum ad valorem under the provisions in paragraph 412 of the Tariff Act of 1930 for "Wood mouldings and carvings to be used in architectural and furniture decoration." The Customs Court sustained the collector's classification and no appeal was taken.

Appellee argues that the merchandise involved herein has not been further advanced than sawed lumber and timber and "falls squarely within the provisions of paragraph 401." Appellee further urges that in referring to "planing" of the lumber, the Tariff Act does not make any requirements as to the machine which does the planing. The operation performed by the machine which produces the imported merchandise, it argues, is a planing operation.

In contending that the merchandise at bar is not classifiable as "Wood moldings and carvings to be used in architectural and furniture decorations," appellee further argues that the legislative history of paragraph 412 shows clearly that it involves the type of ornate carving for which wood carvers are specially qualified.

Appellee urges that the *Bendix* case has no bearing on the issue here involved since the merchandise in the *Bendix* case was not the same as the merchandise here and was not produced in the same manner.

Before ascertaining which paragraph properly classifies the merchandise involved, it might be well first to analyze the wording of the statutes involved and discuss the pertinent legislative history.

Paragraph 412 reads "Wood moldings and carvings to be used in architectural and furniture decoration." The Customs Court in discussing the word "architectural" stated:

> The term "architectural" is defined in dictionaries as relating to the art of building, or to the style of design of a building. *Cf.* Webster's New International Dictionary, 2d edition, 1945, and Funk & Wagnalls New Standard Dictionary, 1942. The tariff provision in which it appears, however, indicates some ambiguity in the use of the word, for the very limitation of the provision in paragraph 412, *supra*, to wood moldings "to be used in architectural and furniture decoration" as well as the association of the term "moldings" with the term "carvings" seem to indicate that what was intended to be covered by the provision was not the ordinary commonplace moldings almost invariably found in any building, but something of a more special nature, on a higher or more artistic plane.

We agree with that statement and we find support for the above quoted excerpt from the Customs Court's opinion in the legislative history of paragraph 412. At hearings before the Ways and Means Committee of the House of Representatives in 1929, referred to in 58 Treas. Dec. 619, T.D. 44382, one Frank Detlef testified in behalf of the International Wood Carver's Association in support of a request for an increase in the rate of duty on carved parts of furniture and carved parts for buildings. He testified:[1]

> Mr. DETLEF. For a number of years the wood carvers of the United States have been suffering from lack of employment, which has caused quite a number of them to seek employment at other vocations. This state of conditions seems to be due to two facts; one being the extensive use of the carving machine and the second and most important, that of importations of carved furniture, and carved parts of furniture, carved piano cases and legs, as well as carved parts for buildings, which have increased to such an alarming extent that unless same is checked the future prospects for the American wood carvers seem hopeless.
>
>     *          *        ·*        *        *        *        *
>
> We are told that the European carver earns on an average of a dollar a day, and there is no reason to doubt that the same is the case with the workers in other crafts. Now, if we add the duty of 33⅓ percent to the above figure, we

---

[1] This testimony is found in 4 TARIFF READJUSTMENT—1929, pages 2284–2287.

find that the total is not even one-half of what the commodity would cost if produced in this country; hence any one must realize that such does not protect us against the cheap European labor conditions.

The same is true, probably in a less degree, for the importation of carved parts for building purposes. * * *

\* \* \* \* \* \* \*

We are not of the class of citizens who have experience in the matter of suggesting how to frame laws, but in our humble way we believe that one of two ways will give us the protection we need in order to earn a living at our calling. One would be to raise the duty to an amount which would equalize the cost of production plus duty, with the cost of production in the United States, and the other would be if the duty were levied on the commodity in accordance with the cost if produced here.

The number of carvers affected by these importations is approximately 1,500 to 1,600 members in our association, and from 500 to 600 who are not in the organization.

Mr. RAINEY. Are the wood carvers diminishing in numbers in this country?

Mr. DETLEF. What is that?

Mr. RAINEY. Are there just as many wood carvers as we have always had, or are they diminishing in numbers?

Mr. DETLEF. There are always wood carvers.

Mr. RAINEY. But is it a waning industry? Are there more now than there used to be?

Mr. DETLEF. No. A great many have left the trade in the course of the last 20 to 25 years on account of irregular employment.

Mr. RAMSEYER. Wood carving, as you do it, is simply done on the higher-grade and higher-priced furniture?

Mr. DETLEF. The higher-priced furniture; and for building purposes, pianos, piano legs, and sometimes pieces such as a panel for anybody to hang up on the wall, brackets, or caps.

\* \* \* \* \* \* \*

Mr. RAINEY. Do they not do a lot of this carving now by machinery? Do we not have machines that do it?

Mr. DETLEF. Yes. There are quite a number of machines in operation.

Mr. RAINEY. You did not have any 25 years ago?

Mr. DETLEF. Most of them are members of our organization all through, because we do not feel as though we should oppose the introduction of machinery, because that is progress, in our estimation.

Mr. RAINEY. Machinery has been introduced in the last 25 years?

Mr. DETLEF. Yes.

Mr. RAINEY. And with machines they can carve much faster than you can carve by hand?

Mr. DETLEF. It makes the carving cheaper, because, for instance, they will produce 4 at a time, or 8 at a time, or perhaps 16 at a time. They have a machine now that will produce 24 at a time.

The floor amendment referred to in 58 Treas. Dec. 619, T.D. 44382 which incorporated the language "Wood moldings and carvings to be used in architectural and furniture decorations" into the Tariff Act of 1930 was introduced by Senator Couzens of Michigan, March 3,

1930 (Cong. Rec., Vol. 72, Part 5, 71st Cong. 2d Sess., page 4653) and the debate on this amendment, was as follows:

THE VICE PRESIDENT. Let the amendment submitted by the Senator from Michigan [Mr. Couzens] be reported.

THE CHIEF CLERK. On page 120, line 22, after the word 'valorem', insert a comma and the words 'wood mouldings and carvings to be used in architectural and furniture decoration, 40 per cent ad valorem.'

Mr. COUZENS. Mr. President, this is an amendment to paragraph 411 [later designated paragraph 412], to include these articles under the rate of 40 per cent ad valorem, which is the rate that was agreed to in the paragraph covering the other articles mentioned there. It appears that the woodworkers or carvers are not protected in these architectural designs for mouldings. The amendment is for the benefit of the woodworkers who are suffering from importations of these articles from other countries. The designs are used in the furniture business and should carry the same rate as furniture.

Mr. WALSH of Massachusetts. What is the present rate of duty?

Mr. COUZENS. Forty per cent.

Mr. WALSH of Massachusetts. The Senator seeks to fix the rate at what figure?

Mr. COUZENS. At 40 per cent.

Mr. WALSH of Massachusetts. What rate did the House fix?

Mr. COUZENS. At 40 per cent.

Mr. WALSH of Massachusetts. At what figure did the Senate Finance Committee leave it?

Mr. COUZENS. At 40 per cent. My amendment does not propose any change in rate. It is merely to include certain articles in the rate.

THE VICE PRESIDENT. The question is on agreeing to the amendment of the Senator from Michigan.

The amendment was agreed to.

Conference Reports No. 1326 of April 28, 1930, page 61, No. 1892 of June 13, 1930, page 65, referred to in 58 Treas. Dec. 619, T.D. 44382 and concerning the amendment, stated:

Amendment No. 390: In the House bill, wood moldings and carvings to be used in architectural and furniture decoration, are not specifically mentioned, but are classified as manufactures of wood or bark, not specially provided for, dutiable at 33⅓ per cent ad valorem. The Senate amendment specifically names these items and imposes a duty thereon of 40 per cent ad valorem; and the House recedes.

We think it clear that the legislative history of the provision in paragraph 412 as to "Wood moldings and carvings to be used in architectural * * * decoration" does *not* support appellant's claim that the imported merchandise is dutiable under that provision.

We also do not think that the imported merchandise consists of "manufactures of wood" as provided for in paragraph 412. It seems clear to us that the wood in the imported merchandise has not been advanced other than being subjected to a process of "planing." In this connection appellee's brief is pertinent wherein it reads:

In spite of statements in the Appellant's brief to the contrary, the classification of this general line of material [the imported merchandise] was well set-

tled almost 50 years ago. An item of standard wood molding was the subject of a decision of the Board of General Appraisers reported in Abstract 39382 [39386] in 1916. The decision because of its importance is quoted * * * [in part] as follows:

"MOLDING—PLANED LUMBER.

McCelland, *General Appraiser:* On October 25, 1915, the board rendered its decision on this protest as follows:

The merchandise consists of planed quarter round spruce molding. It was assessed with duty at the rate of 15 per cent ad valorem under paragraph 176 of the tariff act of 1913. Claim for free entry is made under paragraph 647 of said act.

An examination of the official sample convinces us that the wood involved has not been advanced except by sawing and planing. Under the decision in United States v. Myers (T.D. 35179), it is entitled to free entry, as claimed. The protest is sustained and the decision of the collector reversed.

 *   *   *   *   *   *   *

*Molding plane.*—In *joinery,* a plane used in in [sic] forming moldings; a match plane. Such planes have various patterns or convex and concave soles for making the different parts of moldings, as hollows and rounds.

The difference between novelty siding and beaded lumber made by a "planer and matcher" (see United States *v.* Myers, 5 Ct. Cust. Appls. 541; T.D. 35179) and the molding here involved, made by a "molding machine," is accounted for by the shape and number of knives attached to the respective machines, the surfaces of each produced thereby being accomplished at the same time and by one operation.

Although one surface of the molding in question is convex, it is nevertheless planed or smoothed the same as the other two surfaces, which are flat, and has not been further manufactured than sawed and planed.

The testimony confirms our former decision and the protest is again sustained, the decision of the collector being reversed.

Appellant relies heavily upon the *Bendix* case, *supra,* to support its position. Upon a reading of the opinion in that case it is apparent that the facts there are distinguishable from those of the case at bar. In that case the merchandise was not the same as the merchandise here involved. There the merchandise constituted turnings having different cross-sectional widths. The merchandise was described as comparatively narrow strips or bands of wood "whose profile and section changes are rhythmically repeated." In contrast, each piece of lumber imported here has a constant cross-sectional width throughout its length. Also in the *Bendix* case, the merchandise was produced in a manner quite different than that employed in producing the merchandise before this court. The process used there involved use of a turning machine where the wood was cut across the grain as well as along it. Obviously that was more than being subjected to "planing" in a molding machine.

In view of the foregoing we *affirm* the judgment of the Customs Court.