(C. D. 1462)

TRANSCONTINENTAL SEED, INC.
ALLTRANSPORT, INCORPORATED } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 19, 1952)

*Barnes, Richardson & Colburn* (*Edward N. Glad* and *Joseph Schwartz* of counsel) for the plaintiffs.

*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This is a protest against the collector's assessment of duty on merchandise described as "Italian Lotus Corniculatus Seed" at 2 cents per pound under paragraph 763 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as clover seed, not specially provided for. It is claimed that the merchandise is properly dutiable under said paragraph at 1 cent per pound as forage crop seed, not specially provided for.

The pertinent provision of the tariff act, paragraph 763, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, is as follows:

Grass seeds and other forage crop seeds:

  *    *    *    *    *    *    *

  Clover, not specially provided for, 2¢ per lb.

  *    *    *    *    *    *    *

  Grass and forage crop seeds not specially provided for, 1¢ per lb.

The only issue involved herein is whether the seed of the *Lotus corniculatus* plant, also called bird's-foot trefoil, is a clover seed within the meaning of the tariff act.

At the trial, plaintiffs called Robert C. Foster, president of Transcontinental Seed, Inc. He stated that he had been in the seed business since 1919, starting with the family business in Brno, Czechoslovakia, and that for 12 years he had also been vice president of the Arbitration Court of the Produce Exchange in Brno. He had studied about seeds, had attended international and local conventions of the seed trade, and had visited trial grounds of agricultural experiment stations in Europe and the United States. In 1939, he left Czechoslovakia, came to the United States, and subsequently formed the aforementioned corporation. He had received the degree of doctor of laws and economics from the university in Vienna, Austria.

Dr. Foster testified that he had handled *Lotus corniculatus* seed since 1919 and had seen the plant grown in both Europe and the United States; that he first started to import it into the United States in 1946 and has been importing it regularly ever since; that in the four fiscal years ending June 30, 1950, his firm imported more than 30 per centum of the total importations thereof, selling it throughout the United States. The witness stated that since 1919 he had had the opportunity to become familiar with the seeds responding to the name of clover and with various other forage crop seeds. He agreed with the following definition of "clover," found in Webster's New International Dictionary:

clover * * * Any plant of the genus *Trifolium*. Clovers are low herbs with trifoliolate leaves and flowers in dense heads. Among the numerous species are many valuable forage and bee plants, as the white clover, red clover, alsike clover, crimson clover.

Dr. Foster stated that *Lotus corniculatus* did not fall within that definition because it belongs to a different genus of the plant family from *Trifolium* and does not belong to the same tribe; that it has five leaves rather than three leaves, as *Trifolium* has, and does not have a dense head.

There were introduced into evidence drawings of the *Lotus corniculatus* (plaintiffs' illustrative exhibit 2) and of various types of clover (plaintiffs' collective illustrative exhibit 3). It appears therefrom that the clover leaves are in clusters of three, while the leaves of the *Lotus corniculatus* are in a series of five, three leaves being above and two below. Dr. Foster pointed out that the clover produces seed by forming one seed in each flower in its many flowered head, while the *Lotus corniculatus* flower forms a pod which contains several seeds.

Dr. Foster testified that he had bought *Lotus corniculatus* abroad under its botanical name and also under its French and Italian names, and that he had bought and sold it in this country either as bird's-foot trefoil or as *Lotus corniculatus*. A large number of invoices of sales in the United States was received in evidence as plaintiffs' collective exhibit 4. On all but one of them, the merchandise is designated as bird's-foot trefoil.

Dr. Foster stated that he had never bought or sold *Lotus corniculatus* as a clover and had never seen it offered in the United States under the description of bird's-foot trefoil clover or *Lotus corniculatus* clover. In his opinion, it is not a clover primarily because it is not a trifoliate plant and does not have the characteristics of the genus *Trifolium*. He stated that his opinion is predicated basically on botany, but that botanically and commercially *Lotus corniculatus* is not considered a clover.

Jene Gabriel, vice president of North Atlantic Seed Co., Inc., called as a witness on behalf of the plaintiffs, testified that he had been in the seed business since 1920, from 1920 to 1938 in Europe and since 1941 in this country, and that from 1928 to 1933, he had been a member of the Arbitration Commission of the Berlin Produce Exchange. He had never handled *Lotus corniculatus* in Europe but has handled it in the United States since 1947. He imported it as *Lotus corniculatus*, not as clover, and sold it all over the United States as bird's-foot trefoil or as *Lotus corniculatus*. In his opinion, it does not fall within the definition of "clover," previously quoted, for botanical reasons. He added that he had never seen it offered as bird's-foot trefoil clover or as *Lotus corniculatus* clover, and that he would not consider it to be a good delivery for clover. He had seen bird's-foot trefoil listed in the same column or box with clovers, but he considered that such a listing showed the offeror to be ignorant of the status of *Lotus corniculatus*.

Defendant called Benjamin Ward Baker, grass and farm seed expert for Peter Henderson & Co. He stated that he had been with that firm for 50 years and that since 1923 he had been in charge of the farm and grass seed department. He testified that during the course of his experience he had handled various forage crop seeds and had handled *Lotus corniculatus* since 1947. While his firm does about a million dollars worth of business a year, it sells only about 25 or 50 pounds of bird's-foot trefoil a year. In his opinion, bird's-foot trefoil is commercially treated as a clover; that it is known and accepted as a yellow clover type, that is, a trefoil type. On being shown plaintiff's illustrative exhibit 2, he testified as follows:

X Q. I show you Plaintiff's Illustrative Exhibit 2, and ask you whether or not the flower and plant shown here has trifoliate leaves?—A. It has.

X Q. It has trifoliate leaves?—A. Yes, sir.

X Q.   How many leaves do you find?—A.   Five.

X Q.   Is that trifoliate?—A.   Yes, sir.

X Q.   How many leaves are on Plaintiff's Illustrative Exhibit 3?—A.   That is three.

X Q.   That is trifoliate?—A.   No; that is trifolium.

X Q.   Would you say that is a trifoliate leaf?—A.   No; I would call it trifolium.

X Q.   Trifolium is what?—A.   Three leaves.

X Q.   And trifoliate is 5?—A.   Trefoil is 5.

He added that the flower in plaintiffs' illustrative exhibit 2 is not of the clover type, and that bird's-foot trefoil is similar to yellow clover or yellow trefoil, which his firm handled prior to 1947. He stated that he had never bought or sold *Lotus corniculatus* as *Lotus corniculatus* clover or as bird's-foot trefoil clover.

Dr. Foster was then recalled and testified as follows:

Q.   First, Dr. Foster, how many petals are there on a trifoliate leaf—how many leaves?—A.   Leaves—3, as the name is, tri, as in Latin, 3; and folium is leaf. So trifolium means 3 leaves.

Q.   And so trifoliate leaves——A.   Means 3 leaves; and the leaves of lotus are called pentafoliate.   Penta is 5, and foliate is leaves.

He stated also that he is the largest importer of yellow trefoil in the United States; that it is usually called black medic in this country and belongs to the genus *Medicago*, which is the same genus as alfalfa seed; that it is a plant of a different genus from bird's-foot trefoil and belongs to the clover tribe.

There were introduced into evidence the following price lists:

Corneli Seed Co., St. Louis, Mo., dated May 15, 1951 (plaintiffs' exhibit 9). Bird's-foot trefoil is listed under legumes, between white dutch clover and ladino clover.

Ed. F. Mangelsdorf & Bro., Inc., St. Louis, Mo., dated November 22, 1950 (plaintiffs' exhibit 11).   Bird's-foot trefoil is listed between ladino clover and crimson clover.

L. Teweles Seed Co., Milwaukee, Wis., dated March 13, 1951 (plaintiffs' exhibit 15).   Bird's-foot trefoil is listed separately.

J. M. Schultz Seed Co., Dieterich, Ill., dated March 13, 1951 (plaintiffs' exhibit 17).   Bird's-foot trefoil is listed separately.

Duryea Seed Co., Inc., New York, N. Y., dated April 17, 1951 (defendant's exhibit A).   Bird's-foot trefoil is listed under "Other Clovers."

Craver-Dickinson Seed Co., Inc., Buffalo, N. Y., dated January 26, 1951 (defendant's exhibit B).   Bird's-foot trefoil is listed under a general heading "Clovers."

Stumpp & Walter Co., New York, N. Y., 1950 catalog (defendant's exhibit C). Bird's-foot trefoil is listed under a general heading "Clover."   Included in the group are clover and alfalfa.

T. W. Wood & Sons, Richmond, Va. (defendant's exhibit D).   Bird's-foot trefoil is listed on a page headed "Wood's Dependable Clover Seed."   On the next page alfalfa is included under a heading "Wood's Adapted Clover Seed."

Peter Henderson & Co., New York, N. Y., 1951 catalog (defendant's exhibit F). Bird's-foot trefoil is listed under a heading "Clover—Henderson's Superior." It is stated:

### BIRDSFOOT TREFOIL
#### (*Lotus Corniculatus*)

This variety of Clover is recommended by some states in mixtures for pasture. * * *

Other price lists and catalogs were marked for identification.

Also in evidence is a copy of the "Rules and Regulations under the Federal Seed Act," issued by the United States Department of Agriculture (plaintiffs' exhibit 5). Bird's-foot trefoil is listed separately, not under clover.

On this record, we are asked to determine whether *Lotus corniculatus* or bird's-foot trefoil is a variety of clover. According to the testimony of the witnesses Foster and Gabriel, it is not botanically a clover because it is of a different genus of the plant family, has five leaves rather than three, does not have a dense head, and forms the seed differently. However, it is well established that tariff acts are not drafted in terms of botany but in the language of commerce, which is presumptively that in common use. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *Maltus & Ware* v. *United States*, 6 Ct. Cust. Appls. 376, T. D. 35920; *Hummel Chemical Co.* v. *United States*, 29 C. C. P. A. 178, C. A. D. 189; *The Levy & Levis Co., Inc.* v. *United States*, 23 Cust. Ct. 8, C. D. 1180. Therefore, the testimony herein as to the botanical classification of bird's-foot trefoil has no probative value. *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117.

The common meaning of a tariff term is a matter of law to be decided by the court and the testimony of witnesses is advisory only. *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. 110, 113, C. A. D. 293, and cases there cited. In order to determine such meaning, the court may consult dictionaries, lexicons, and other written authorities, and may also draw upon its own knowledge. *Nix* v. *Hedden*, 149 U. S. 304; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219; *United States* v. *John B. Stetson Co.*, 21 C. C. P. A. 3, T. D. 46319; *United States* v. *O. Brager-Larsen*, 36 C. C. P. A. 1, C. A. D. 388.

Plaintiffs and defendant have cited various authorities in their respective briefs and the court has consulted others. From these it appears that the term "clover" is not limited in common usage to plants of the genus *Trifolium*, but also includes plants of other genera, such as sweet or Bokhara clover (*Melilotus*), bush clover (*Lespedeza*), prairie clover (*Petalostemon*), spotted or bur clover (*Medicago*), Japan clover (*Lespedeza striata*). (Webster's New International Dictionary; Funk & Wagnalls New Standard Dictionary; New International

Encyclopaedia; Nelson's Perpetual Loose-leaf Encyclopaedia, A New English Dictionary; New Century Dictionary.) Some of the authorities also include bird's-foot trefoil among the plants to which the name clover is popularly applied. New International Encyclopaedia; A New English Dictionary. Webster's New International Dictionary contains the following:

bird's-foot clover = Bird's-Foot Trefoil<br>
bird's-foot lotus = Bird's-Foot Trefoil<br>
lotus grass = Bird's-Foot Trefoil

Trefoil has been defined as "Any species of *Trifolium*; any one of the clovers: so called from the trifoliolate leaves; also, the black medic, and other plants with trifoliolate leaves" and bird's-foot trefoil as "any one of various species of the genus *Lotus*, especially the common species (*Lotus corniculatus*) of the Old World." (Funk & Wagnalls New Standard Dictionary; Webster's New International Dictionary.)

It is not entirely clear from these authorities that bird's-foot trefoil is among the plants to which the name "clover" is commonly applied.

The same state of uncertainty seems to exist among commercial dealers. Plaintiffs' exhibits 15 and 17 list bird's-foot trefoil separately; plaintiffs' exhibits 9 and 11 list it separately, but between two varieties of clover; defendant's exhibits A, B, and F list it under the general heading of "clover"; and defendant's exhibits C and D list it under "clover," but also include thereunder alfalfa. The witnesses agreed that alfalfa is not a clover.

It has been held that standards established by the Department of Agriculture may be pertinent to the determination of the identity of particular products. *Gallagher & Ascher Co.* v. *United States*, 24 Cust. Ct. 1, C. D. 1199, and cases there cited. The definitions in the Rules and Regulations under the Federal Seed Act (plaintiffs' exhibit 5) include among the clovers not only those belonging to the genus *Trifolium*, but also Alyce (*Alysicarpus vaginalis*), bur (*Medicago hispida* Gaertn.), bur, spotted (*Medicago arabica*), sour (*Melilotus indica*), and sweet (*Melilotus officinalis* and *Melilotus alba*). Trefoil (bird's-foot and big) and *Lespedeza* are listed separately. *Lespedeza* is one of the plants which, according to the authorities, is commonly considered as a variety of clover.

All of the witnesses stated that they had never bought or sold this type of merchandise as *Lotus corniculatus* clover or as bird's-foot trefoil clover. The invoices introduced into evidence as plaintiffs' collective exhibit 4 show that this type of merchandise was sold as bird's-foot trefoil or as bird's-foot trefoil seed. While defendant's witness, Mr. Baker, testified that bird's-foot trefoil is commercially known and accepted as a yellow clover or trefoil type, his statement was apparently based on its similarity to yellow trefoil, which his firm

had handled previously. He was also confused as to whether the word "trifoliate," in the definition of clover quoted above, meant three leaves or five. Dr. Foster testified that yellow trefoil is the same as black medic (*Medicago*). The authorities indicate that plants of that genus are among those commonly called clover.

Dr. Foster testified that his opinion that bird's-foot trefoil is not considered a clover is based not only on botany but also on commerce. It is to be noted in this connection that his firm imported 30 per centum—more than 400,000 pounds—of all the bird's-foot trefoil imported during the four fiscal years from 1946 to 1950, while Mr. Baker's firm sold only 25 or 50 pounds a year.

On this record and in view of the lack of agreement among the authorities, it cannot be held that bird's-foot trefoil is *commonly*, that is, generally or usually, known as a variety of clover. The most that can be said is that it is so considered by some authorities and by some dealers. It is, therefore, not within the common meaning of the term "clover" as said term is used in the tariff statutes.

We hold, therefore, that the merchandise herein is properly dutiable at 1 cent per pound under paragraph 763 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as a forage crop seed, not specially provided for. The protest is sustained and judgment will be rendered accordingly.