(C.D. 4099)

DAVIES, TURNER & Co.
B. AXELROD Co. } v. UNITED STATES

United States Customs Court, First Division

(Decided October 21, 1970)

*Glad & Tuttle* (*George R .Tuttle* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Owen J. Rader* and *Robert E. Burke,* trial attorneys), for the defendant.

Before WATSON and MALETZ, Judges, and WILSON, Senior Judge

WILSON, Senior Judge: The imported merchandise was exported from Rangoon, Burma on August 4, 1963 and was entered at the port of Philadelphia on October 15, 1963 by the broker for the account of B. Axelrod & Company of San Francisco, California.

This merchandise is invoiced as "TEAK BOAT DECKINGS" and is described as 1⅞ inches by 9/16 of an inch, in lengths of 6 feet and up, averaging 8 feet. Exhibit 1 is representative thereof except as to length.

The collector of customs at Philadelphia classified the merchandise as "Hardwood flooring in strips and planks, whether or not drilled or treated," under item 202.57 of the Tariff Schedules of the United States (TSUS) and assessed duty at 4 per centum ad valorem.

The plaintiffs contend by alternate claim in the protest, that the merchandise is properly dutiable at $3.00 per 1000 board feet under TSUS item 202.36 as lumber, dressed or worked, hardwood, teak.

Other claims in the protest are not argued in plaintiffs' brief, nor was an amended claim (R.14) under TSUS 202.63 for wood moldings at 1.5 per centum argued. The court deems them abandoned and they will be dismissed. *Continental Arms Corp., Gehrig, Hoban & Co., Inc.* v. *United States*, 65 Cust. Ct. 80, C.D. 4058 (August 7, 1970), citing *Randolph Rand Corp., J. J. Boll* v. *United States*, 52 Cust. Ct. 107, C.D. 2445 (1964), affirmed 53 CCPA 24, C.A.D. 871 (1966).

THE STATUTES

Tariff Schedules of the United States, Schedule 2, Part 1, Subpart B:

ASSESSED RATE

|  | | |
|---|---|---|
| | Wood flooring, whether in strips, planks, blocks, assembled sections or units, or other forms, and whether or not drilled or treated (except softwood flooring classifiable as lumber): | |
| 202.57 | Hardwood flooring in strips and planks, whether or not drilled or treated_____ | 4% ad val. |

CLAIMED RATE

Subpart B headnotes:

1. This subpart covers lumber, wood siding, wood flooring, wood moldings, and certain wood carvings and ornaments, including such products when they have been drilled or treated.

2. For the purposes of this part, the following terms have the meanings hereby assigned to them:

(a) Lumber: A product of a sawmill or sawmill and planing mill derived from a log by lengthwise sawing which, in its original sawed condition, has at least 2 approximately parallel flat longitudinal sawed surfaces, and which may be rough, dressed, or worked, as set forth below:

(i) rough lumber is lumber just as it comes from the saw, whether in the original sawed size or edged, resawn, crosscut, or trimmed to smaller sizes;

(ii) dressed lumber is lumber which has been dressed or surfaced by planing on at least one edge or face; and

(iii) worked lumber is lumber which has been matched (provided with a tongued-and-grooved joint at the edges or ends), shiplapped (provided with a rabbeted or lapped joint at the edges), or patterned (shaped at the edges or on the faces to a patterned or molded form) on a matching machine, sticker, or molder.

Edge-glued, or end-glued wood over 6 feet in length and not over 15 inches in width shall be classified as lumber if such wood as a solid piece without glue joints would be deemed to be lumber as defined above.

(b) <u>Softwood</u>: Wood from trees of coniferous species (order Coniferae).

(c). <u>Hardwood</u>: Wood from trees of non-coniferous species.

(d) <u>Drilled or treated</u>: Drilled at intervals for nails, screws, or bolts, sanded or otherwise surface processed in lieu of, or in addition to, planing or working, or treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints, or enamels, but not including anti-stain or other temporary applications mentioned in headnote 4 of this subpart.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Lumber, rough, dressed, or worked (including softwood flooring classifiable as lumber, but not including siding, molding, and hardwood flooring):

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Hardwood:

202.36　　Balsa (*Ochroma lagopus*) and teak (*Tectona grandis*) _____ $3 per 1000 ft. board measure

There is no dispute concerning the essential facts as disclosed by the record. The evidence introduced by plaintiffs' only witness, Burton Axelrod, is uncontroverted. Mr. Axelrod was a well qualified witness. The defendant offered no evidence.

Plaintiffs offered exhibits of teakwood 1 to 6, inclusive. The oral testimony shows that the plaintiff B. Axelrod Co. had imported teakwood of first European quality from Thailand or Burma for six years either as lumber or as decking material. Mr. Axelrod testified that he is "totally familiar with the imported merchandise and its use and has made many sales of material like exhibit 1 on the East and West Coasts of the United States as well as to Canadian purchasers; that all buyers were boat builders, "strictly original equipment manufacturers of pleasure craft boats"; that exhibit 1 is a representative sample of the imported merchandise except as to length, but the configuration and finish are the same; that he has observed teakwood like exhibit 1 used many times by the boat builders to whom he sold; that he spends about two months each year traveling throughout the United States calling on boat builders and very frequently observes the application of wood like exhibit 1; that he works with them at times and "troubleshoot[s] on problems, solve[s] them."

The uncontroverted evidence of plaintiffs' witness satisfactorily discloses that the imported teak boat deckings which are exemplified by exhibit 1, except for length, are teakwood and are chiefly used by

boat builders as strictly original equipment by manufacturers of pleasure craft boats; that he saw the process of manufacture in both Rangoon, Burma, and Bangkok, Thailand, and saw similar products in Singapore and Hong Kong; that exhibit 2 is a sample of teak flooring; that exhibits 3 and 4 are fairly close to the same thing, namely: parquet flooring; that exhibit 5 is a tongue and groove pattern of regular parquet flooring; that exhibit 6 is called finger flooring with felt on the back. He said that the only use of material like exihibit 1, that he observed or heard about, is for installation on decks of pleasure boats and yachts and that it is so dedicated; that it is limited to that extent as boat decking and may be called a floor or roof depending upon the point of observation; that teakwood like exhibit 1 cannot be used as a molding and he never sold it as such; that when this decking is on the platform of a ship, people walk on it but people do not generally walk on the sides or forward deck of a ship although that may be done to get to the anchor or for repairs or for servicing the ship.

The record herein fails to disclose that the imported teak boat decking is *chiefly used* as hardwood *flooring* throughout the United States. It is, however, dedicated by the preponderance of use for *installation on decks of pleasure boats and yachts*. Thus, the proof of record demonstrates that teakwood like exhibit 1 is not *flooring* under TSUS 202.57 as classified and furthermore, is not teak *lumber*, rough, dressed or worked under TSUS 202.36, as claimed.

In *Mitsui & Co., Ltd.* v. *United States*, 56 Cust. Ct. 267, C.D. 2636 (1966), certain Japanese oak mosaic *flooring* was classified under paragraph 412, Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52476, as manufactures wholly in chief value of wood, not specially provided for. The court overruled plaintiff's claim under paragraph 404 of said act, as modified by T.D. 53865 and T.D. 53877, as *flooring* of Japanese white oak as the record did *not* establish that the merchandise was *chiefly used as flooring throughout the United States*.

Webster's New International Dictionary, 1958 edition, defines the terms "flooring" and "floor" as follows:

> flooring, a A platform, floor, or pavement. b Material for a floor or floors (sense 1).

> floor, 1. The bottom or lower part of any room; the part of a room upon which one stands.

Funk & Wagnalls New Standard Dictionary, 1956 edition, states:

> flooring, 1. Material from which to make a floor.

> floor, 1. The bottom surface in a room or building on which the inmates walk, and which supports the movable articles of furni-

ture, etc. : usually constructed of boards, or planks, but sometimes of tiles or bricks, or of iron or other metal.

Other definitions are as follows:

Webster's Third New International Dictionary (1963), page 873, defines the word "flooring" as follows:

1. *Platform*, *Floor*, Pavement
2. Material (as tongue-and-groove lumber) for *floors* * * *. [Emphasis supplied.]

Funk and Wagnalls New Standard Dictionary of the English Language, 1952, at page 664 defines the word "deck" as follows:

1. Naut. (1) A *platform* forming the ceiling of one verticle division of a vessel, and usually the *floor* of another. [Emphasis supplied.]

Based upon these definitions, "flooring" is a platform or floor, or merchandise comprising a platform or floor, while the word "deck" is a term which applies to a platform or floor *of a ship*. In this case, according to the evidence, it applies to pleasure boats or yachts.

As hereinbefore noted, the testimony, undisputed, clearly established that the exclusive and chief use of the imported teak boat decking, exhibit 1 except for length, is on the *decks* of pleasure craft boats. It is not chiefly used as flooring under TSUS 202.57. This merchandise does *not* conform to the definitions of "flooring" above stated and therefore may not be assessed as "flooring" under TSUS 202.57. Nor does the evidence establish that the imported teak boat decking is teak lumber, rough, dressed or worked, as provided for in TSUS 202.36.

The court is permitted to consult, not as evidentiary, dictionaries and other written authorities as well as to consider its own knowledge, to ascertain the common meaning, which is a matter of law, of tariff terms. The testimony of a witness is only advisory. *Transcontinental Seed, Inc., Alltransport, Incorporated* v. *United States*, 29 Cust. Ct. 163, C.D. 1462 (1952).

Certain hardwood flooring consisting of assembled planks composed of strips, matched to exact dimensions, having two tongues on one face and two matching grooves on the opposite face, and fastened by aluminum or steel dowels laterally, which could be produced in various lengths was used almost exclusively for railroad car flooring. It was known in the railroad industry as plank flooring. The court held the flooring properly dutiable under TSUS 202.57 as hardwood flooring in strips and planks, whether or not drilled or treated, rather than under TSUS 202.60, as other wood flooring. *D. B. Frampton &*

*Company, Dorf International, Inc.* v. *United States*, 60 Cust. Ct. 4, C.D. 3243, 277 F. Supp. 1014 (1968).

Tariff Classification Study of November 15, 1960, Schedule 2, wood and paper, printed matter at pages 21 and 22 contains the following in reference to the term "flooring" contained in TSUS 202.57 and TSUS 202.60:

> * * * Hardwood flooring in strips and planks consists of lumber milled to accurate dimensions, either tongued and grooved or with square edges and ends. This flooring is usually planed, and may be sanded or otherwise surface-finished, hollow-backed, or drilled with holes for nails. Usually strips range in thickness from $\frac{5}{16}$ to $\frac{25}{32}$ inch and in width from $1\frac{1}{2}$ to $1\frac{3}{4}$ inches. Plank flooring is thicker and wider, and usually has a squared edge.

In *A. N. Deringer, Inc.* v. *United States*, 61 Cust. Ct. 66, C.D. 3530, 287 F. Supp. 1016 (1968), wedge-shaped wooden articles described on the invoices as "horsefeathers," which were manufactured by sawing logs into boards, then resawing the boards longitudinally, then bevel cutting the resawn boards, were held to be lumber under TSUS 202.03 rather than as articles of wood under TSUS 207.00.

The court has considered all of the arguments and cited cases by respective counsel but does not deem it necessary to further comment thereon because of the conclusion reached herein.

The protest alternate claim under item 202.36 is overruled. All other claims in the protest are dismissed. The classification of the collector is *not* affirmed. Judgment will be entered accordingly.