(C.D. 4417)

B. Axelrod & Co. *v.* United States

Court No. 67/13052

(Decided April 20, 1973)

*Glad, Tuttle & White* (*George R. Tuttle* of counsel) for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Gilbert Lee Sandler*, trial attorney), for the defendant.

MALETZ, Judge: This case involves the dutiable status of teak decking in random lengths ranging from 6 to 13 feet that was imported from Thailand, the country of manufacture, and entered at the port of Los Angeles in 1966.

The imported decking was assessed by the government with duty at 4 percent under item 202.57 of the tariff schedules as "[h]ardwood flooring in strips and planks, whether or not drilled or treated." Plaintiff claims that this assessment is erroneous and that the importation is properly dutiable either as $3.00 per 1,000 board feet under item 202.36 as teak "[l]umber, rough, dressed, or worked," or, alternatively, at 1.5 percent under item 202.63 as "[s]tandard wood moldings, not drilled or treated."

The relevant provisions of the tariff schedules are as follows:

Schedule 2, Part 1, Subpart B:

Subpart B headnotes:

1. This subpart covers lumber, wood siding, wood flooring, wood moldings, and certain wood carvings and ornaments, including such products when they have been drilled or treated.

2. For the purposes of this part, the following terms have the meanings hereby assigned to them:

(a) Lumber: A product of a sawmill or sawmill and planing mill derived from a log by lengthwise sawing which, in its original sawed condition, has at least 2 approximately parallel flat longitudinal sawed surfaces, and which may be rough, dressed, or worked, as set forth below:

 (i) rough lumber is lumber just as it comes from the saw, whether in the original sawed size or edged, resawn, crosscut, or trimmed to smaller sizes;
 (ii) dressed lumber is lumber which has been dressed or surfaced by planing on at least one edge or face; and

 (iii) <u>worked lumber</u> is lumber which has been matched (provided with a tongued-and-grooved joint at the edges or ends), shiplapped (provided with a rabbeted or lapped joint at the edges), or patterned (shaped at the edges or on the faces to a patterned or molded form) on a matching machine, sticker, or molder.

 * * * * * * *

 (c) <u>Hardwood</u>: Wood from trees of non-coniferous species.

 (d) <u>Drilled or treated</u>: Drilled at intervals for nails, screws, or bolts, sanded or otherwise surface processed in lieu of, or in addition to, planing or working, or treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints, or enamels, but not including anti-stain or other temporary applications mentioned in headnote 4 of this subpart.

 (e) <u>Standard wood moldings</u>: Wood moldings worked to a pattern and having the same profile in cross section throughout their length.

Assessed under:

 Wood flooring, whether in strips, planks, blocks, assembled sections or units, or other forms, and whether or not drilled or treated (except softwood flooring classifiable as lumber):

| | | |
|---|---|---|
| 202.57 | Hardwood flooring in strips and planks, whether or not drilled or treated_____ | 4% ad val. |

Claimed under:

 Lumber, rough, dressed or worked (including softwood flooring classifiable as lumber, but not including siding, molding, and hardwood flooring):

 * * * * * * *

 Hardwood:

| | | |
|---|---|---|
| 202.36 | Balsa (*Ochroma lagopus*) and teak (*Tectona grandis*)_____ | $3 per 1000 ft., board measure |

Claimed alternatively under:

 Wood moldings, and wood carvings and ornaments suitable for architectural or furniture decoration, whether or not drilled or treated:

| | | |
|---|---|---|
| 202.63 | Standard wood moldings, not drilled or treated _____ | 1.5% ad val. |

It is undisputed that the imported merchandise is dedicated for use in the installation of decks on pleasure boats and yachts; is chiefly used for that purpose; and is identical to the merchandise involved in *Davies, Turner & Co., B. Axelrod Co.* v. *United States*, 65 Cust. Ct. 337, C.D. 4099 (1970) (sometimes hereafter referred to as "*Davies, Turner*"), the record in which has been incorporated here.

Plaintiff's witness, Burton Axelrod, a teakwood importer, whose primary business is supplying teakwood to boat builders and who had testified in the incorporated *Davies, Turner* case, stated that the Thai teak involved here and the Burmese teak involved in the incorporated case were produced in the same way by placing varying lengths of rough sawn boards of teakwood 2 inches wide and ¾ of an inch thick in the mouth of a planing machine.[1] Each board travels through the machine on a belt and in the process is cut by four cutting heads so that it emerges surface planed on all four sides.[2] The merchandise is not sanded, treated, or drilled in any manner and has the same profile throughout its entire length.

In the incorporated case, Axelrod, who was the sole witness, testified that he sold the type of teak in issue to builders of pleasure craft boats for use as decking over plywood on the forward deck, side deck or aft deck, where it provides water tightness, is not slippery, and will not rot out from ocean dank. The deck of a ship, he stated, is that part where people and traffic can move. He also pointed out that the deck on the side and the forward deck are also the roof of the boat, underneath which is the living space, cabins, galley and heads.

During the trial of the present case, Axelrod further testified that he had never sold the imported merchandise for use as molding or for picture framing and had never seen it so used, but added (R. 21):

> The fact that I feel it would make an odd-looking molding does not mean that it isn't molding. This would also be a matter of taste.[3]

The witness added that he would consider the imported teak decking to be "molding" under the following definition from the 1934 edition of *Webster's International Dictionary:* "Act or process of shaping in or on a mold, or of making a mold." He stated, however, that the importation was not used in the manner specified by the following definition of "molding" from the 1967 edition of *Webster's Third International Dictionary:* "A decorative plane or curved strip used for ornamentation or finishing."

---

[1] Axelrod agreed that these machines were described by two definitions of "molding machines" contained in *Webster's Third New International Dictionary* (1967): (1) "a planing machine for cutting moldings", and (2) "a stationary machine for planing wood."

[2] Upon completion of the cutting process, the teak decking strip, as imported, is 1⅞ inches wide and 9/16 of an inch thick.

[3] Further on this aspect, the witness stated that the following excerpt from his testimony in *Davies, Turner* "seem[ed] to be in order" (R. 20–21):

Q. In your opinion, is this molding, Plaintiffs' Collective Exhibit 1?

A. It is tough to answer because—yes, it could be a molding, though I never really thought of it as a molding.

Q. Have you ever seen it used as a molding?

A. In the state that it is right there in your hand, no, I don't think it could be used as molding.

Q. Have you ever sold it as a molding?

A. No.

Defendant's witness, Joseph Philip Hartog, who holds a degree in architecture and is also a naval architect and designer of commercial craft and yachts, stated that he was engaged in wooden boat building, repairs and motor installation from 1946 to 1963; that he has designed and built boats with teak decks; and that he has also designed buildings in the United States. He testified to the following effect: The nomenclature used with respect to parts of boats is different from that employed for comparable parts of other structures, such as buildings or homes. Thus, "flooring" in house construction refers to a platform or dividing platform between stories, whereas in a boat it refers to the timber that holds the bottom of the frames together and is spiked to the keel. The boat "floor" is not walked on as it is located underneath the areas of the finished boat, and it cannot be seen from inside the boat unless the hatch is lifted up.

The "deck" is the area of the boat that is walked on and, in pleasure craft, it refers "strictly" to the main deck or exterior deck, whereas the cabin "sole" which "would be the same as the floor in a house", is the walking area below the deck. The "ceiling" in a boat is the inside covering from the inside of the frames inside the hold and is more or less comparable to the paneling on a wall, while in a building it is the covering under the floor joints.

Hartog distinguished between "deck" and "decking" as follows (R. 39):

> The deck I would call the whole structure of the craft, structure plus the watertight covering, plus what's on top of that. The decking I would call strictly the walking area on top of the structure.

In a boat 35 to 50 feet in length, the deck is constructed after most of the hull is completed: the deck beams are laid on the frame; waterproof plywood or planking is put on; and fiberglass is placed over the plywood. The teak strips, which can be laid as curved or straight decking, are then placed on top of the plywood in a polysulphide compound; the seams between the strips are also filled with the polysulphide compound which keeps water from getting in between them; and the deck is finished off, smoothed, and sanded. The deck keeps the weather out of the inside of the boat and serves as an important structural member because it gives stiffness to the boat. It also provides a walking surface and compartments below. The teak strips are used for their beauty and nonskid surface, and also have excellent weather resistance. However, a plywood deck without the teak stripping serves all of the purposes of a deck. Teak which is laid down as stripping on a deck is not used for its tensile strength or structural properties: however, if the teak strips have a tongue and groove, they can be used to

serve a functional purpose as full or side decks of small motorboats and run-abouts.

He would not use the teak strips as molding in their imported condition; they would first have to be run through a machine.

Hartog distinguished between "floor" and "flooring" as follows (R. 52):

> Flooring I would strictly consider the area you walk on. The floor, talking as not a boat man but as an architect, more or less I would say it's the whole structural member, beams and membrane, in between the two stories.

In constructing a floor and laying hardwood flooring, a subfloor is first made, and a plywood or hardboard overlay is laid over it. The flooring is then laid in a paste on top of the plywood. Hardwood flooring does not serve any structural function in a building or home, and is constructed in the same manner as the teak strips used on a boat deck, except that flooring is laid very tightly together on the edges, whereas teak decking is always laid with a slight opening between the strips to allow for expansion and contraction.

In the witness' opinion the teak strips laid on a flat wood deck serve the same purpose as the hardwood flooring in a home or building, and are a variety of hardwood flooring.

At this juncture, we now consider the decision in the incorporated *Davies, Turner* case. In that case, plaintiffs had contended that the imported merchandise was properly dutiable as teak lumber, dressed or worked, under item 202.36, but did not pursue their claim under item 202.63 as wood moldings. The latter claim was therefore deemed abandoned by the court and dismissed. With respect to the government's classification of the merchandise under item 202.57 as hardwood flooring and plaintiffs' claim that the merchandise was properly dutiable under item 202.36 as teak lumber, the court, upon summarizing the record, stated (65 Cust. Ct. at 341):

> The record herein fails to disclose that the imported teak boat decking is *chiefly used* as hardwood *flooring* throughout the United States. It is, however, dedicated by the preponderance of use for *installation on decks of pleasure boats and yachts*. Thus, the proof of record demonstrates that teakwood like exhibit 1 is not *flooring* under TSUS 202.57 as classified and furthermore, is not teak *lumber*, rough, dressed or worked under TSUS 202.36, as claimed. [Emphasis in original.]

Citing various dictionary definitions of "floor", "flooring" and "deck", the court concluded (*id.*, at 342):

> Based upon these definitions, "flooring" is a platform or floor, or merchandise comprising a platform or floor, while the word "deck" is a term which applies to a platform or floor *of a ship*.

In this case, according to the evidence, it applies to pleasure boats or yachts.

As hereinbefore noted, the testimony, undisputed, clearly established that the exclusive and chief use of the imported teak boat decking, exhibit 1 except for length, is on the *decks* of pleasure craft boats. It is not chiefly used as flooring under TSUS 202.57. This merchandise does *not* conform to the definitions of "flooring" above stated and therefore may not be assessed as "flooring" under TSUS 202.57. Nor does the evidence establish that the imported teak boat decking is teak lumber, rough, dressed or worked, as provided for in TSUS 202.36. [Emphasis in original.]

Accordingly, the court overruled plaintiffs' claim under item 202.36 without, however, affirming the government's classification under item 202.57.

In the present case, defendant argues that decking is a variety of hardwood flooring, as established by dictionary definitions and the testimony of its witness Hartog, and thus within the scope of item 202.57; that this item more specifically describes the merchandise than the "teak lumber" provision of item 202.36; and that plaintiff has failed to establish that the decking is "standard wood molding" within the meaning of item 202.63.

Defendant also urges that the decision in *Davies, Turner* is *stare decisis* here on the stated basis that plaintiff has presented no new evidence and has failed to demonstrate "clear error" on the part of the court. Alternatively, defendant asserts that the evidence of record establishes the correctness of the government's classification; that the court in *Davies, Turner* committed clear error in holding the 'flooring' classification to be erroneous" and in believing "decking material to be properly classifiable as parts of yachts or pleasure boats"; and that in that circumstance while *stare decisis* does not apply to the court's ruling on the flooring classification, it applies to that part of the court's ruling overruling plaintiffs' claim under item 202.36.

The rule of *stare decisis* is, of course, an expression of the sound public policy that there must be an end to litigation and that issues formerly determined should not be readjudicated except upon a clear and convincing showing of error in the former holding. E.g., *United States v. Dodge & Olcott, Inc.*, 47 CCPA 100, C.A.D. 737 (1960); *United States v. R. J. Saunders & Co., Inc.*, 42 CCPA 128, C.A.D. 584 (1955); *United Merchants, Inc. v. United States*, 60 CCPA 11, 14 C.A.D. 1073 (1972). However, where additional facts are presented in a later case, remedying the deficiency of proof in the earlier one and compelling a different conclusion, the rule of *stare decisis* is not controlling. *Adolphe Hurst & Co., Inc. v. United States*, 33 CCPA 96, C.A.D. 322 (1946). And when the occasion arises and the court has before it more persuasive evidence, it has been recognized that "the better course is to reevaluate, rather than merely to perpetuate."

*William Adams, Inc.* v. *United States,* 56 Cust. Ct. 429, 439, C.D. 2670 (1966).

In this connection, defendant postulates the rather interesting thesis that *stare decisis* may be applied discriminately to a judicial decision disposing of several issues; thus it in effect argues here that in a subsequent case involving the same issues and merchandise, *stare decisis* is applicable only to that part of the earlier decision overruling plaintiff's claim but is not applicable to the court's holding that the government's classification is erroneous.

Whether this contention has merit need not be reached since, on the expanded record before us and upon review of the legislative history, we hold that the teak decking in issue was erroneously classified as hardwood flooring under item 202.57 and is properly classifiable as teak lumber under item 202.36.[4]

## Whether the importation is hardwood flooring within the meaning of item 202.57

The evidence of record establishes that teak decking is not bought, sold, commercially interchangeable with, or known generally as, "flooring". Defendant does not dispute these facts but relies rather on the claimed similarity of use for flooring and decking as set out in the lexicons and as testified to by its witness Hartog in order to support the government's finding underlying its presumptively correct classification, namely, that decking is a "variety" of flooring.

This argument turns upon the meaning to be accorded to the term "flooring." As no question of commercial designation is involved here, the common meaning of the term will control in the absence of a demonstrated contrary legislative intent. *Marshall Field & Co.* v. *United States,* 45 CCPA 72, C.A.D. 676 (1958) ; *United States* v. *Mercantil Distribuidora et al.,* 43 CCPA 111, C.A.D. 617 (1956). The common meaning of a tariff term is a question of law for the court and in determining that meaning, the court may receive testimony of witnesses, which is advisory only, and consult lexicons and other relevant authorities. *Trans-Atlantic Company* v. *United States,* 60 CCPA 100, C.A.D. 1088 (1973) ; *United States* v. *National Carloading Corp., et al.,* 48 CCPA 70, C.A.D. 767 (1961) ; *United States* v. *O. Brager-Larsen,* 36 CCPA 1, C.A.D. 388 (1948).

The terms "flooring" and "decking" have been defined as follows:

*Funk & Wagnalls New Standard Dictionary* (1942) :

decking * * * 2. Material from which a deck is built.
flooring, Material from which to make a floor.

---

[4] In the absence of a ruling on the merits, *stare decisis* would not preclude consideration of plaintiff's claim under item 202.63 as standard wood moldings which claim, as previously noted, was deemed abandoned by the court and therefore dismissed.

*Webster's New International Dictionary, Second Edition* (1934):

decking * * * 2. The material forming a deck, and its fashioning. flooring * * * a A platform, floor, or pavement. b Material for a floor or floors.

In *Mitsui & Co., Ltd.* v. *United States*, 56 Cust. Ct. 267, C.D. 2636 (1966), involving merchandise that was invoiced as Japanese oak mosaic flooring and classified under paragraph 412 of the Tariff Act of 1930, as modified, as manufactures wholly or in chief value of wood, not specially provided for, plaintiff claimed that the merchandise was properly dutiable under paragraph 404 of that act, as modified, as flooring of Japanese white oak. The court held that in order to sustain the claimed classification, it would have to find that the imported merchandise was "chiefly used for making floors" and overruled the protests for failure to establish such chief use.[5]

Inasmuch as "decking" is a material used on "decks" and "flooring" is a material used on "floors", the court must necessarily consider whether the term "deck" comes within the common meaning of "floor". These terms have been defined as follows:

*The New Century Dictionary*, Vol. 1 (1946):

deck, A covering; also, a platform extending from side to side of a ship or of a part of a ship, forming a covering for the space below and itself serving as a floor; hence a platform or part resembling this; * * *.

floor, That part of a room or the like (consisting of boards, planks, tiles, stone, concrete, etc.) which forms its lower inclosing surface, and upon which one walks; * * * *naut.*, that part of the bottom of a vessel on each side of the keelson which is most nearly horizontal.

*Webster's New International Dictionary, Second Edition* (1934):

deck * * * 2. The floorlike platform of a horizontal section, or compartment, of a ship. * * *

floor * * * 1. The bottom or lower part of any room; the part of a room upon which one stands. * * * 11. *Shipbuilding.* a The bottom of a vessel on either side of the keel; esp., the flat part of the hull next to the keel. b A timber of the frame lying across the keel or deep plate of the transverse framing between the frame and reverse frame angles.

*Century Dictionary & Cyclopedia* (1913):

deck * * * 2. An approximately horizontal platform or floor extending from side to side of a ship or of a part of a ship, as of a deck-house and supported by beams and carlines.

---

[5] See also *United States* v. *C. S. Emery & Co.*, 18 CCPA 208, 210, T.D. 44399 (1930): "*Flooring*, siding, and ceiling may be sawed, planed, and tongued and grooved and yet it is *material for making floors*, ceilings, and sidings." [Emphasis added.]

floor, 1. That part of a room or of an edifice which forms its lower inclosing surface, and upon which one walks; specifically, the structure, consisting in modern houses of boards, planks, pavement, asphalt, etc., which forms such a surface. * * * 5. *Naut.* That part of the bottom of a vessel on each side of the keelson which is most nearly horizontal.

*American Mechanical Dictionary* (1872):

Deck. (*Shipbuilding*) A floor in a ship above the bottom of the hold. * * *

Floor 1. (Building) The surface on which a person walks in a room or house. * * * 2. The bottom part of the hold on each side of the keelson. The flat portion of a vessel's hold.

*The Encyclopedia Americana* (1953):

Floor. (1) *In architecture and building,* the lower surface of the different levels of a structure. * * * (3) *As a nautical term,* the bottom part of the hold on each side of the keelson; the flat portion of a vessel's hold. * * *

Some similarity between the terms "deck"[6] and "floor", as the latter is used in its first sense, is evident: both are horizontal platforms on which a person can walk; both lend support to the structure in which they are built; and both may be laid over with a material which serves as the actual walking surface.

On this latter aspect, it is to be observed, however, that these surface covering materials are not laid in the same fashion. Thus, the record shows that flooring planks or strips are laid very tightly together; on the other hand, in order to allow for contraction and expansion, decking must not be tightly fitted, must provide a non-skid surface, and must be laid in a bedding material that will keep the water from running in between the strips and the sub-deck.

Further, the term "floor" not only refers to a horizontal platform on' which a person can walk, it also has another separate, distinct and well-recognized meaning with regard to vessels, namely, the bottom part of the hold on each side of the keel. This is made clear not only by Hartog's testimony and the above-quoted definitions but also by the following additional definition of "floor" set forth in *Funk & Wagnalls New Standard Dictionary* (1942 ed.):

* * * 6. *Ship-building* (1) the nearly horizontal interior part of a vessel's bottom on each side of the keel. (2) pl. Timbers of the frame lying across the keel and usually bolted through it and the keelson; floor-timbers.[7]

---

[6] The term "decking" or "roof decking" is also used to describe a certain type of wood roofing material. See *Tariff Classification Study, First Supplemental Report,* January 1962, pp. 13, 14, 308–10, 518–33, 543–44, 582–84; however, we are not concerned with its use in that sense.

[7] See also Howard I. Chapelle, *Boatbuilding,* W. W. Norton & Company, Inc. (1941), which describes, as well as diagrams, the building of boat floors and decks, and the uses of

In light of their entirely different meaning when used in connection with vessels and shipbuilding, we are unable to find that the terms "floor" and "flooring" have the all-pervasive connotation defendant claims for them. Thus, "decks" are not "floors" within the common understanding, nor is "decking" a "flooring" within the common meaning of that term.

The recognition of "decking" as a separate article from "flooring" is reinforced by reference to Tariff Commission publications prepared for the use of Congress which also clearly distinguished between the two items. For example, the *Summary of Tariff Information*, 1929, describes various cabinet woods, including teak, that are classifiable under the provision in paragraph 403, Tariff Act of 1922, for "wood manufactured, not specially provided for," and states, as follows (Schedule 4, p. 932) :

> * * * Some of the imported cabinet woods, because of some particular characteristic, are preferred over all other kinds of wood for specific purposes, such as * * * teak for *ship decks* and fittings, because of its durability and non splintering quality; * * * [Emphasis added.]

By contrast, this *Summary* notes, in the section on the lumber provision of paragraph 1700, Tariff Act of 1922 (Schedule 15, p. 2564), that the imports and exports of hardwood lumber shown for certain years include "hardwood flooring".

As another example, the *Summaries of Tariff Information*, Vol. 4, 1948, prepared in response to a resolution of the House Ways and Means Committee to rewrite or otherwise bring up to date the commodity summaries of tariff information, make the following comment in the section on "teak lumber" provided for in paragraph 1803(1), Tariff Act of 1930 (p. 133) :

> * * * teak is used in the United States principally in ship construction, especially in naval vessels, mostly for *decking* and to a lesser extent for platforms, rails, ladders, and fittings. [Emphasis added.]

In the section on hardwood lumber, not further manufactured than planed, and tongued and grooved, n.s.p.f., also provided for in paragraph 1803(1) of the 1930 act, the 1948 *Summaries* state (p. 136) :

> The hardwoods common to the United States and Canada are

floor timbers, flooring and decking. In addition, a Bureau of Ships' publication, *Wood: A Manual for Its Use in Wooden Vessels*, 1945, prepared by the Forest Products Laboratory, Forest Service, U.S. Department of Agriculture, in cooperation with the Research and Standards Branch, Bureau of Ships, Navy Department, describes the properties of wood with respect to the design, construction, repair and maintenance of wooden ships and boats. Table 9–1, pp. 142–43 of this *Manual*, lists separately the grades and species of wood suitable for various parts of large vessels, including those suitable for "decking" on the one hand, and "flooring" on the other. From this, it is apparent that the *Manual* treats "decking" and "flooring" as separate parts of a vessel.

used for furniture, *flooring*, motor vehicles, railway cars, caskets, boxes, crates, handles, sash doors, and numerous other commodities * * * [Emphasis added.]

In short, considering that the 1948 *Summaries* refer separately to "flooring" and "decking" in a discussion of the articles covered by paragraph 1803 (1), we think it evident that the latter had acquired, for classification purposes, a tariff status separate and distinct from "flooring". Nor do we find any indication in the Explanatory Notes to the *Tariff Classification Study*, Schedule 2, November 15, 1960, of any intent to disturb this distinction in the proposed revised tariff schedules which were subsequently enacted into law in 1962.[8]

The situation here is somewhat analogous to that in *Border Brokerage Company, Inc.* v. *United States*, 56 Cust. Ct. 137, C.D. 2620 (1966), involving wooden pails classified as manufactures of wood, not specially provided for, under paragraph 412, Tariff Act of 1930, and claimed to be properly classifiable under the provision for "[c]asks, barrels, and hogsheads" in paragraph 407 of that act on the ground that they belonged to the barrel family of products used to hold and transport merchandise. The pails were made in cooperage shops in much the same way as barrels and casks and used for at least some of the same purposes as the latter, namely, the packing and transportation of fish, but were commonly known as "pails". Holding that the pails did not come within the common meaning of casks, barrels, and hogsheads, the court stated (p. 143) : "While pails and barrels are forms of wooden containers, a pail is not one form of a barrel nor is a barrel one form of a pail. One cannot be classified under an *eo nomine* provision for the other."

Similarly here, while both flooring and decking are forms of surface coverings for horizontal platforms and in that sense correspond to each other, neither one is a form of the other.

In view of all the foregoing, it must be concluded that the teak decking in issue is not "flooring" within the meaning of item 202.57.

## Whether the importations are standard wood moldings within the meaning of item 202.63

Schedule 2, part 1, subpart B, headnote 2(e), defines "Standard wood moldings", for the purpose of that subpart, as "[w]ood moldings worked to a pattern and having the same profile in cross section throughout their length." Manifestly, this definition does not apply to *any wood articles* having the stated physical characteristics, as

---

[8] See, by way of contrast, *D. B. Frampton & Company, Dorf International, Inc.* v. *United States,* 60 Cust. Ct. 4, C.D. 3243, 277 F. Supp. 1014 (1968), involving "Doweloc", a material conceded to be hardwood flooring, which was used almost exclusively for "railroad car flooring" and known in the railroad industry as "plank flooring".

plaintiff claims. Were this contention correct, every piece of lumber, or stick of wood, with a rectangular cross section, would be a standard wood molding. Instead, the headnote definition clearly applies only to wood *moldings* which are worked to a pattern and have the same profile in cross section throughout their length. In other words, as a prerequisite to classification under item 202.63, it must first be established that the article is a *molding*. This raises the question of whether the imported articles come within the common meaning of that term. See *Bendix Manufacturing Company* v. *United States*, 28 Cust. Ct. 144, C.D. 1401 (1952).

"Molding" is defined as follows in *Funk & Wagnalls New Standard Dictionary* (1942):

> * * * 3. A more or less ornamental strip on some part of a structure or object, as on a picture-frame; specif., in architecture, a depressed or projecting member, typically a subordinate member, and usually of ornamental intent, on a surface or in an angle of any part of a building, usually showing in cross-section a complex broken line composed chiefly of curves, but often richly carved, and used in combination with several others, as in a cornice, capital, door- or window-jamb or -head, etc.

And in *Webster's New International Dictionary, Second Edition* (1934), the term "molding" is defined as follows:

> * * * 3. *Arch.* a A plane, or curved, narrow surface, either sunk or projecting, used for decoration, often in groups, by means of the lights and shades upon the surface. b A strip of material having such a surface and prepared for ornamental application, as to a wall.

It is patent that the merchandise in issue, which has never been bought, sold, known or used as molding, and, as plaintiff's witness stated, "would make an odd looking molding", is not "molding" and therefore not within the ambit of item 202.63.

Withal, plaintiff insists that *Border Brokerage Company, Inc.* v. *United States*, 63 Cust. Ct. 243, C.D. 3903 (1969), substantiates its claim. We do not agree. *Border Brokerage* involved picture-frame moldings that were worked to a pattern and had the same profile in cross section throughout their length. The moldings were classified under item 202.66, which embraces wood moldings other than "standard wood moldings not drilled or treated." In support of this classification, defendant contended that they were "special" rather than "standard" moldings because they were made specifically for use in making picture frames.

The court rejected this contention and upheld plaintiff's claim that

the articles were standard wood moldings dutiable under item 202.63, stating (pp. 247–48):

> * * * In the light of the meaning to be assigned to the term "Standard wood moldings", as set forth in the headnotes of subpart B, part 1 of schedule 2, and the fact that the provision for standard wood moldings in item 202.63 is without qualification as to the use to which they are to be put, the court is of the opinion that item 202.63 covers all forms of moldings that come within the headnote definition, provided they have not been drilled or treated. If it had been the intention of Congress to except picture frame moldings from the provision for standard wood moldings, it would have been a simple matter to do so by express language.

The statement "without qualification as to the use" must be read within the context of the opinion which holds that the standard wood molding provision covers "*all forms of moldings*" that come within the headnote definition, including moldings dedicated to a specific use, provided they have not been drilled or treated. But in no wise does this decision extend the molding classification to reach articles not used or recognized as such.

## Whether the importation is hardwood teak lumber within the meaning of item 202.36

The record establishes, through Axelrod's uncontroverted testimony, that the imported teak decking was produced by running the rough sawn teak board through a planing machine with cutting heads so that it was planed on all four sides, and given a tongue and groove profile. Thus the imported teak comports with the statutory definition of lumber, specifically worked lumber, as set out in schedule 2, part 1, subpart B, headnote 2(a)(iii):

> 2. For the purposes of this part, the following terms have the meanings hereby assigned to them:
>
> (a) Lumber: A product of a sawmill or sawmill and planing mill derived from a log by lengthwise sawing which, in its original sawed condition, has at least 2 approximately parallel flat longitudinal sawed surfaces, and which may be rough, dressed, or worked, as set forth below:
>
> \* \* \* \* \* \* \*
>
> (iii) worked lumber is lumber which has been matched (provided with a tongued-and-grooved joint at the edges or ends), shiplapped (provided with a rabbeted or lapped joint at the edges), or patterned (shaped at the edges or on the faces to a patterned or molded form) on a matching machine, sticker, or molder.

Indeed, apart from arguing that *Davies, Turner* is *stare decisis* of the issue, defendant does not deny that item 202.36 embraces the teak in question but contends instead that the flooring provision of item

202.57 "more specifically describes" the importation than the provision for lumber.[9] Be that as it may, it has long been recognized that material such as flooring and similar items used to make other articles are lumber though known by other names. Thus, prior to the addition of flooring provisions in the Tariff Act of 1930,[10] flooring was classifiable in the earlier tariff acts under the provisions for lumber not further advanced than sawed, planed, tongued and grooved. In this connection, dressed birch flooring, planed, tongued and grooved, with holes bored at regular intervals for nails, and oak flooring, planed, tongued and grooved, with knots and discolorations removed by a planer and matcher, have been held classifiable under paragraph 647, Tariff Act of 1913, as lumber, not further manufactured than sawed, planed, tongued and grooved, rather than as manufactures of wood under paragraph 176 of that act. *Carr* v. *United States*, 11 Ct. Cust. Appls. 35, T.D. 38647 (1921) ; *National Hardwood Co. et al.* v. *United States*, 36 Treas. Dec. 598, T.D. 38075—G.A. 8275 (1919). Similarly, ceiling lumber and novelty siding boards, planed, tongued and grooved, where the planing included beading, were held to be no further advanced than lumber as provided for in paragraph 647 of the 1913 act. *United States* v. *Myers*, 5 Ct. Cust. Appls. 541, T.D. 35179 (1915). Also, Japanese oak flooring, sawed, planed, tongued and grooved, was held free of duty under paragraph 1700, Tariff Act of 1922, as lumber not further manufactured than sawed, planed, and tongued and grooved rather than dutiable as wood unmanufactured under paragraph 403 thereof. *United States* v. *Mitsui & Co. et al.*, 17 CCPA 67, T.D. 43359 (1929). See also *United States* v. *C. S. Emery & Co., supra*, 18 CCPA at 210.

In *A. N. Deringer, Inc.* v. *United States*, 61 Cust. Ct. 66, C.D. 3530, 287 F. Supp. 1016 (1968), the court, reviewing the history of the tariff provisions for lumber prior to the tariff schedules, noted that many wood items such as the "horsefeathers" there involved were held properly dutiable under the earlier acts as lumber rather than as manufactures of wood notwithstanding the fact that they were known by a name other than lumber and that as a result of sawing and planing they were useful only for a single purpose. The court then observed (p. 74) :

> * * * Indeed, the language of the tariff schedules makes it clear that various specified articles * * * are properly dutiable as lum-

---

[9] Since the government's classification is found to be erroneous, the issue of relative specificity need not be and is not reached.

[10] Par. 402 of that act provided :

Maple (except Japanese maple), birch, and beech : Flooring * * *.

Par. 404 provided :

Cedar commercially known as Spanish cedar, lignumvitae, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, Japanese white oak, and Japanese maple : In the form of sawed boards, planks, deals, and all other forms not further manufactured than sawed, and flooring * * *.

ber even though they are usable only for a single purpose and are known by a separate name other than "lumber".[11]

It is apparent from the foregoing that the teak decking in issue, like siding and ceiling, etc., is a form of lumber and classifiable as such unless provided for more specifically elsewhere in the tariff schedules. As previously observed, in the incorporated *Davies, Turner* case, the court found that the record failed to establish that the merchandise was lumber, rough, dressed, or worked. However, the testimony adduced in the present case, coupled with a review of the legislative history of the provisions in issue, persuades the court that the imported teak decking is, as claimed by plaintiff, properly classifiable under item 202.36 which provides for hardwood teak lumber, rough, dressed, or worked. Judgment will be entered accordingly.

(C.D. 4418)

---

[11] The heading governing items 202.03 to 202.43 of the tariff schedules reads:

Lumber, rough, dressed, or worked (including softwood flooring classifiable as lumber, but not including siding, molding, and hardwood flooring) :